JOHN BORIN'S CASE.

Suffolk. March 7, 1917. — June 27, 1917.

Present: RUGG, C. J., BRALEY, DE COURCY, PIERCE, & CARROLL, JJ.

. *Workmen's Compensation Act.*

If a workman is employed in a dye house in a room in which the bottom sashes of the windows back of a row of tubs of boiling dye are "nailed down so that the men would not be crawling over the tubs to open the windows," the bottoms of the windows on the other side of the room having been left free, and, the heat in the room being excessive, such employee in order to get fresh air takes a hammer and chisel and passing over the covers of the dye tubs attempts to remove the slat that holds down one of the windows, when he is "struck in the eye by a piece of the chisel" knocked off by a blow of the hammer, his injury cannot be found to have been one arising out of his employment within the meaning of the workmen's compensation act.

In the case above described it appeared that at the time of the accident the bottoms of the windows on the other side of the room, which the employee properly might have opened, remained closed, so that the question did not arise as to what the rights of the employee would have been if the prying open of the nailed window had become necessary to obtain more ventilation in order to be able to continue to work in the room.

In the same case it was *said* that the court did not intend to intimate that an employee is not within the statute when, being suddenly called upon to save himself from threatened loss of life or limb or serious bodily harm, he necessarily breaks a rule appertaining to the sphere of his employment and is injured.

APPEAL to the Superior Court under St. 1911, c. 751, Part III, § 11, as amended by St. 1912, c. 571, § 14, from a decision of the Industrial Accident Board awarding compensation to John Borin for an injury sustained by him on June 27, 1916, when employed in the dye room of the William Ryle Company at Newton Upper Falls.

The case was heard by *Lawton,* J. The material portion of the evidence is described in the opinion. The following statement of the testimony of the employee is taken from the report of the arbitration committee:

"John Borin, the employee, testified, through an interpreter, that on Tuesday, June 27, 1916, he was employed by the insured corporation in its dye room at Newton Upper Falls. It was a

very warm day and it was very hot in the room and there was a lot of steam there. He wanted to get some fresh air and taking a hammer and chisel tried to pry open one of the windows back of the dye tubs. He was obliged to climb over the tub to get to the window. The window was held shut by a bracing which was nailed against the sash. He inserted the chisel between the bracing and the window frame and struck the chisel with his hammer; something flew into his eye. He got the window open and remained at work until six o'clock that night, his usual hour of quitting, and worked on Wednesday and Thursday. His eye was getting worse all the time and he never saw anything out of it after it was struck, Tuesday afternoon. . . . He cannot see out of the eye now. He had been working for the insured for five or six weeks at the time of his injury and had charge of the tubs in the dye house. The tubs extended along one side of the room close to the wall and are filled with boiling liquid. Steam is constantly coming from the tubs. The window which he tried to open was one of a row of seven along the side of the room back of the tubs, the tubs covering the lower sashes of all the windows. There was another row of seven windows higher up on the wall above these and these windows were opened at the time. On the other side of the room where the windows are similarly arranged, the upper row was opened. There are twenty-six dormer-windows in the roof, thirteen on each side; these windows were not opened. The foreman never told him not to open these windows back of the tubs. He felt very warm and thought he would open them. After he was struck in the eye by a piece of the chisel he asked the man next to him if his eye was gone and the man told him it was bleeding. He did not think it was serious and didn't show it to his boss until Friday. . . . There was so much steam in the room that he thought he would open the window and let some of it out. The steam boils the dyes and makes the room extremely hot. . . . There were only two persons who worked at his end of the room, one was himself and the other was a man whose first name was August; August was with him when he opened the window."

The foreman of the room testified that, "beside Borin, August Glaneiweiski tended the tubs at the end of the room where the employee was injured. On the other side of the room it is not difficult to get at the bottom windows. No orders were ever given not to open these windows and there are no notices prohibiting

the opening of them. He remembers the week in which the employee was injured and it was a pretty hot week."

No new evidence was introduced before the Industrial Accident Board, who decided the case upon the report of the arbitration committee.

The judge made a decree in accordance with the decision of the Industrial Accident Board ordering the insurer to pay to the employee $93.60 on account of total incapacity for work: and $7.20 weekly for a period of fifty weeks from June 27, 1916, on account of the loss of vision in the injured eye. The insurer appealed.

*E. C. Stone & G. Gleason,* for the insurer, submitted a brief.

*F. H. Caskin, Jr.,* (*M. J. McSweeney* with him,) for the employee.

BRALEY, J. It is settled that personal injuries suffered in the performance of acts within the scope of his employment which have not been forbidden by the employer and are found to have been necessary to the physical welfare of the employee while in the discharge of his duties, are deemed to have arisen not only in the course of, but out of his employment. *Von Ette's Case,* 223 Mass. 56, 60, 61, and cases there cited.

The insurer also concedes that "the securing of fresh air . . . was incidental to his work," and the finding of the Industrial Accident Board that by reason of excessive heat in the room "fresh air became a necessity" is warranted by the evidence.

While no question of negligence or assumption of risk is presented, yet it is reasonably certain that to pass over the top of the dye tubs filled with hot water constantly emitting steam would expose the employees, even if the tubs were covered, to the hazard of personal injuries for which compensation could be claimed. And the employer had the right to anticipate and guard against such events by causing the lower or bottom "sashes in the windows" back of the dye tubs to be "nailed down so that the men would not be crawling over the tubs to open the windows." It was undisputed, that the window in question could not be opened except by detaching the slat by which it was fastened, and that the accident happened as the claimant, after passing over the tubs, was attempting to remove the slat by the use of a chisel and hammer, when he "was struck in the eye by a piece of the chisel," caused by a blow of the hammer.

The workmen's compensation act indeed should be construed liberally, yet contracts for personal service are not thereby abrogated nor is the employer thereby restricted from enlarging or diminishing his business, and from extending or limiting accordingly the field of employment. It may often happen that because of defects which must be remedied, or of necessary repairs, a portion of the works is "shut down," although the remainder continues in operation. If under such circumstances and with knowledge of them an employee solely for his own personal comfort, and in the exercise of his discretion, is injured while on the part, the use of which has been shut off or forbidden, it would be going far to say, that he is entitled to compensation because the accident arose out of his employment. The claimant therefore must be held to have worked in the dye house as fitted for use by his employer, who had the absolute right to close the windows temporarily, or permanently, so that the premises should be used as if those windows formed no part of the construction or equipment, of which conditions he had implied or constructive notice. The fastened window spoke as plainly to him that it was to remain closed as if a printed notice had been posted, or an oral order had been given, the intentional violation of which ordinarily would have precluded compensation.

If it be assumed that the prohibition was applicable only to normal working conditions, and was never intended to be operative when more ventilation became so necessary that if not obtained the employee might be obliged to cease work, the uncontroverted evidence abundantly shows, that the "bottom" windows on the other side of the dye tubs which properly could have been opened by him remained closed.

We do not intend however to intimate that an employee is not within the statute where, being suddenly called upon to save himself from threatened loss of life or limb or serious bodily harm, he necessarily violates a rule appertaining to the sphere of his employment and is injured.

The claimant having failed to show that the accident arose out of his employment, the decree awarding compensation must be reversed, and the claim disallowed.

*Ordered accordingly.*