## GEORGE KOZA'S CASE.

Suffolk.    September 16, 1920. — October 14, 1920.

Present: RUGG, C. J., DE COURCY, CROSBY, CARROLL, & JENNEY, JJ.

*Workmen's Compensation Act*, Injuries to which act applies. *Agency*, Scope of employment.

If an employee in the dyeing room of a textile factory, whose duty was the operation of two machines known as "jigs," after he had complained several times on different occasions to his foreman of a defective condition of ventilators in the roof which caused water to drip upon the cloth in the machines and had received assurance that the defective condition would be remedied, with a view to promoting his employer's interest but without the knowledge or permission of his foreman goes upon the roof of the room to remedy the defect and is injured by a fall while so doing, the injuries so received must be *held* not to have arisen out of or in the course of his employment.

CERTIFICATION to the Superior Court under the provisions of the workmen's compensation act of a decision of the Industrial Accident Board awarding compensation to the claimant.

A single member of the board found, with a report of the evidence, as follows:

"It is found upon the above evidence, and a view of the premises taken at the request of counsel on both sides, that the injury received by the employee on November 4, 1919, did not arise out of and in the course of his employment, and the insurer is therefore not liable for compensation.

"The claimant's work was that of a jigger, operating and tending two machines for dyeing cloth. These machines, with others, were in a room on the first floor of the subscriber's mill. On the roof of the building were a number of ventilator pipes, made of heavy sheet metal, which rose above the roof about seven or eight feet. A metal hood was on top of each pipe, made so as to swivel or turn with the wind. Their purpose and use was to supply ventilation for the room in which the dyeing machines were operated by the claimant and other employees. The dyeing room was of considerable height and at times condensed vapor or steam hung on a level with a man's head, and at certain times when the wind blew down it blew the steam still lower. Some water would drip occasionally from the ventilator pipe under which the claimant sat at times. The seat was about ten or fifteen feet away from the machine which the claimant tended, but could be moved if the claimant wished. The employee had complained to his foreman a number of times about the steam and the way the ventilators did not remove it. The foreman said it would be referred to the boss of the mechanical department, but conditions continued as above stated.

"On the morning of the accident the steam was hanging low and condensing somewhat from above. Some water dripped upon him on the seat under the ventilator pipe, not far from his machine. The claimant then left his machine and started to go up upon the roof of the building, carrying with him an oil can, to see if he could fix the ventilator which rose above the roof nearest his machine. Before leaving his machine he told a fellow employee that he was going upon the roof, but did not say why. To reach the roof he had to go up a stairway to the room over the one in which he worked. When he reached this room some carpenters were working upon the roof just outside of the window which led from the room. In stepping upon the roof the claimant fell into an opening, which was covered by a piece of tin, which the carpenters had made in the roof in connection with installing a revolving fan for drawing air into the building. When the claimant fell into the opening the fan was in motion, and he received serious and permanent injuries from which he is totally disabled. The ventilator to which the claimant intended to go to examine and fix, if he could, was at another part of the roof, a considerable

distance from the window through which he passed. The claimant had been upon the roof, near the window, before this to assist in closing the windows opening upon the roof near the place where he was injured, when violent thunder-storms occasionally came up. He had been requested to do this, only for this purpose, when his foreman, or the second or third hands were with him, and some other employees. The foreman or second or third hands would take these men up from the dye room for the purpose of closing windows. He had never gone to the roof before, other than to close the windows, and under such circumstances. At the time the employee was on the roof, and received his injury, there was no emergency affecting the business or endangering the employee, the conditions being such as occurred at times as above stated.

"It is therefore found that the work which the employee went upon the roof to do was not incidental to and did not arise out of and in the course of his employment."

On review, the full board found and ruled as follows:

"Each machine was about five feet long and the employee was obliged to stand at the side of the machines, when working. During the time the machines were running, there was steam in the room, ventilators having been installed to take this steam away. For some time prior to the day upon which the injury had occurred, these ventilators were not in good working order and the employee had on different occasions complained of this fact to his foreman, and had received assurance that the defective conditions would be remedied. On the day upon which the employee was injured, the steam hung very low in the room, at all times on a level with the employee's head, and occasionally, when the wind blew, still lower. There was a hole in the ventilator through which water was leaking down upon the employee. The ventilator was not working, and the steam was coming down and being condensed into water. At times, as the steam condensed and turned into water, it dripped from the water pipes on to the cloth while in the process of dyeing. Because of the conditions brought about by the defective ventilator and their effect upon the work of dyeing and upon the employee himself, and in the hope of alleviating conditions concerning which he had frequently complained, Koza went upon the roof where the ventilator was located with that purpose in view. His act and the purpose which moved him were

so intimately connected with his employment conditions, that the resulting injury rightfully may be held to be within the scope of his employment relation and to have occurred in the course of and to have arisen out of such employment."

In the Superior Court by order of *Wait*, J., a decree was entered in accordance with the decision of the Industrial Accident Board. The insurer appealed.

The case was submitted on briefs.

*G. Gleason*, for the insurer.

*P. L. Keenan*, for the employee.

CARROLL, J. The employee operated two dyeing machines known as "jigs." In the dyeing room where he was employed there was a large amount of steam, and at times water would drip from the ventilator pipe. He complained to his foreman that the ventilators were not working properly and the foreman promised to have them repaired. The employee testified that on the morning of November 4, 1919, because of a defect in the ventilator "steam was coming down on him and condensing into water," and "water was dripping from above." Without the knowledge of the employer, he went from the dyeing room to the roof of the building for the purpose of repairing the ventilator; a few feet from the window by which he came to the roof, there was a hole through which he fell onto a revolving fan, and was severely injured.

It was no part of the employee's occupation to repair the ventilator. Before the day of his injury he had never attempted this work, and without the knowledge or permission of his foreman, and without any express or implied authority from his employer, although seeking to promote its interest, he engaged in an undertaking which was not within the scope of his employment, and could not be found to arise out of it, or in its course. The case is governed by *Borin's Case*, 227 Mass. 452, *Bolden's Case*, 235 Mass. 289, *Rochford's Case*, 234 Mass. 93.

The decree of the Superior Court is to be reversed and a decree is to be entered for the insurer.

*So ordered.*