(No. 13885.—Reversed and remanded.)

The Union Colliery Company, Defendant in Error, *vs.* The Industrial Commission *et al.*—(Nellie Harnetiaux, Admx. *et al.* Plaintiffs in Error.)

*Opinion filed June 22, 1921—Rehearing denied October 6, 1921.*

1. Workmen's compensation—*when compensation may be recovered although employee violates provision of Mining act* Although an employee, in riding with a loaded car in the hoisting shaft of a mine, violates section 12 of the Mining act, compensation is recoverable for his death where the injury is received while he is engaged in the duties of his employment and where the employer is chargeable with notice that it was the custom of employees to ride with the car, as the violation of the statute in such case merely amounts to contributory negligence, which does not bar recovery under the Compensation act.

2. Same—*general rule as to when violation of order bars a recovery.* Where the violation of a rule or order takes the employee entirely out of the sphere of his employment and he is injured while violating such rule or order it cannot be said that the accident arose out of the employment and compensation is not obtainable under the Compensation act, but if in violating the rule or order the employee does not put himself out of the sphere of his employment he is only guilty of negligence, which does not bar recovery.

Writ of Error to the Circuit Court of Jackson county; the Hon. W. N. Butler, Judge, presiding.

A. W. Kerr, and Fred H. Kruger, for plaintiffs in error.

298—36

GEORGE W. DOWELL, and KRAMER, KRAMER & CAMPBELL, for defendant in error.

Mr. JUSTICE DUNCAN delivered the opinion of the court:

This is a writ of error prosecuted by Nellie Harnetiaux, widow and administratrix of Leon Harnetiaux, deceased, and her children, to review a judgment of the circuit court of Jackson county quashing the record of the proceedings before the Industrial Commission and setting aside an award of compensation in favor of plaintiffs in error.

The facts proved are the following: The deceased was employed by defendant in error as top cager at its coal mine, on the night shift. He also during his night's work helped lay rails and timbers on the bottom and to load props in the yard to be carried down into the mine. The tipple, at the top of which he performed his duties as top cager, was built of concrete and was about forty feet in height above the top of the shaft. In going up to his work as top cager he generally ascended a flight of stairs on the east side of the shaft but often ascended to the top on the cage. When called down to load props he descended by way of the steps. At 10:30 o'clock on the night of his injury, May 8, 1919, he was called down from the top of the tipple to load props to be carried into the mine. He walked down the stairway as usual, and when he had finished loading the props a car of coal was brought up on the cage, which he stopped at the mouth of the shaft by signal to the hoisting engineer. This car of coal was to be dumped at the top of the tipple, and deceased apparently got on the cage to ride to the top in order to be at his place in time to dump the car. Just before reaching the top of the tipple he was caught in some unknown manner and so injured that he died before the parties present could get to him in time to see what had happened. The duties of the deceased at the top of the tipple were to land the cage on the landing knees and roll the car into a dumper and dump it. One witness testified

that the deceased rode up on the cage two or three times the night he was killed, and further testified that he rode on the cage as many as four or five times a night but that he always came down the stairway. There is a concrete beam near the top of the tipple, at the north side. The deceased was on the north side of the car when found. The north side of the shaft from the top of the ground to this beam is open, leaving plenty of space for one to ride in safety unless it be at the point where the cage passes the beam. From the north side of the cage to the concrete beam is four and five-sixteenths inches. From the north side of the cage to the north side of a loaded car, which is held on the cage by safety dogs, is thirteen and one-fourth inches, which gives a clearance of seventeen and nine-sixteenths inches between the car and the beam.

The sole question presented in this record is whether or not deceased's death arose out of and in the course of his employment. The deceased was performing his regular duties at the time, and the evidence unquestionably shows that he was killed while in the performance of his work. The only reasons given by defendant in error for the claim that the injury and death did not arise out of and in the course of the employment is that the deceased rode on the cage to the top for the purpose of dumping the car of coal, and that in thus riding the cage he violated paragraph (*b*) of section 12 of the Mining act, which provides that no one shall ride on a cage containing either a loaded or empty car. It is insisted by plaintiffs in error that this statute has no application to the facts in question, and that it applies only to the hoisting of men and material between the bottom of the shaft and the ground landing. As we view the question under consideration, it is immaterial whether said section of the Mining act applied to the deceased in doing his work on the night shift. There is no evidence in the record that defendant in error or any of its bosses ever forbade the deceased to ride on the cage to the top of the

tipple at any time or under any circumstances. Many of the witnesses testified to frequently seeing the deceased ride the cage to the top. It appears from the evidence that when the top cager is at the mouth of the shaft he cannot, by walking up the steps, reach the top in time to dump a car of coal being hoisted. From the number of times that the deceased was proven to have ridden to the top of the tipple on the cage we think the defendant in error is chargeable with notice that it was his habit to do so, although the top foreman testified that he had not seen him ride on the cage from the ground to the top. Of course we must accept this statement as true, but neither he nor any other witness claimed that the deceased was forbidden to ride the cage except one fellow-servant of the deceased,—a top man,—who testified that he told deceased not to ride the car on the trip on which he was killed; that it was against the law.

Riding the cage to the top of the tipple for the purpose of dumping the car of coal did not have the effect of taking the deceased out of the line or scope of his employment. Had he walked up the stairway instead of riding the cage, we apprehend that no one would say that he was not actually performing his duties to defendant in error. Performing the act by the former method would have been the safer way, and had he not performed it in the more dangerous way the claim made by the defendant in error that he would not have been injured and killed must be accepted as true. Conceding that he violated section 12 of the Mining act, the most that can be said is that in so doing he was guilty of negligence. (*Alexander* v. *Industrial Board,* 281 Ill. 201.) We held in the case just cited that the violation of a city ordinance was *prima facie* evidence of contributory negligence, and that such violation did not bar the recovery of compensation although it resulted in the employee's death. We also held in that case, and have held in a number of other cases, that contributory negli-

gence is not a bar to recovery under the Compensation act. *Decatur Railway Co.* v. *Industrial Board*, 276 Ill. 472; *Chicago Railways Co.* v. *Industrial Board*, 276 id. 112; *Hahnemann Hospital* v. *Industrial Board*, 282 id. 316.

Defendant in error contends that the prohibition of the statute against riding the cage with a car on it ought to have the same effect as an order or rule of the employer against riding the cage. If this be conceded we cannot concur in defendant in error's conclusion that such order or rule would bar a recovery of compensation by plaintiffs in error. If in violating such rule or order the employee does not put himself out of the sphere of his employment, so that it may be said he is not acting in the course of it, he is only guilty of negligence in violating such rule and order, which does not bar recovery. (*Chicago Railways Co.* v. *Industrial Board, supra.*) Of course, where the violation of a rule or order takes the employee entirely out of the sphere of his employment and he is injured while violating such rule or order, then it cannot be said that the accident arose out of the employment. In *Jackson* v. *Denton Colliery Co.* W. C. & Ins. Rep. 91, (7 B. W. C. C. 92,) it is said: "The sole question in this cause is whether the man was outside the sphere of his employment. It does not matter in the slightest degree how many orders he disobeys or how bad his conduct may have been if he was still acting within the sphere of his employment and in the course of it and if the accident arose out of it." The deceased in this case was clearly acting within the sphere of his employment and in the course of it. His injury arose out of and in the course of his employment, and the plaintiffs in error have without question proven this fact. They were entitled to recover compensation.

The judgment of the circuit court must therefore be reversed and the cause remanded to that court, with directions to quash the writ.

*Reversed and remanded, with directions.*