(No. 14812.—Judgment affirmed.)

THE OMAHA BOARDING AND SUPPLY COMPANY, Defendant in Error, *vs.* THE INDUSTRIAL COMMISSION *et al.*— (VIOLA CONOVER, Plaintiff in Error.)

*Opinion filed February 21, 1923.*

1. WORKMEN'S COMPENSATION—*when claim may be filed within eighteen months under section 24 of Compensation act.* Where an injury causes an employee to remain away from his employment for six days, after which he returns to work, he is entitled to file his claim for compensation within eighteen months after his return to work, as provided in section 24 of the Compensation act as amended in 1919.

2. SAME—*when violation of employer's direction does not bar compensation.* Violation of orders or directions of the employer does not defeat the employee's right to compensation where such violation does not take the employee out of the sphere of his employment, and where an employee is directed to travel by rail, the fact that he was traveling by automobile at the time of his injury will not bar the right of his widow to compensation for his death resulting from the injury where the accident occurred in the course of the employment.

3. SAME—*when question of jurisdiction of Industrial Commission is waived.* Although a party files a motion before the Industrial Commission to dismiss the proceeding for want of jurisdiction and undertakes to limit its appearance for that purpose, yet if it appears before the commission and discusses the merits of the case without moving to dismiss on the ground that the stenographic report was not filed in time it cannot afterward raise that question in the Supreme Court.

4. SAME—*company furnishing boarding supplies to laborers is not engaged in hazardous business.* A corporation organized for and engaged in the business of furnishing lodging and boarding

supplies and provisions for laborers employed by railroad companies, other corporations or persons and furnishing laborers by means of its employment agency, is not engaged in a hazardous occupation within the meaning of paragraph 1 or 4 of section 3 of the Compensation act so as to bring it automatically under the act.

5. SAME—*what is not operating warehouses within meaning of Compensation act.* Paragraph 4 of section 3 of the Compensation act, including the operating of warehouses or general or terminal storehouses among hazardous employments, does not extend to any storehouse or place where goods or articles are stored, when, in fact, there is no hazardous occupation of any employee engaged in or working about the same.

WRIT OF ERROR to the Circuit Court of Cook county; the Hon. FRANK JOHNSTON, JR., Judge, presiding.

WILLIAM A. JENNINGS, for plaintiff in error.

F. S. HOWELL, and ERNEST A. BAUGHMAN, for defendant in error.

Mr. JUSTICE DUNCAN delivered the opinion of the court:

On August 10, 1920, plaintiff in error, Viola Conover, widow of John D. Conover, deceased, filed her petition before the Industrial Commission for compensation against the Omaha Boarding and Supply Company, defendant in error. The arbitrator selected made a finding that the Industrial Commission had no jurisdiction in the cause. On petition for a review the Industrial Commission set aside the decision of the arbitrator and awarded compensation under the Workmen's Compensation act at $100 per month for 37 months and $50 for one month, and found that the deceased left plaintiff in error as his widow and a daughter aged six years as his only heir-at-law. Upon a writ of *certiorari* the record of the commission was reviewed by the circuit court and quashed and the award set aside, and this court allowed a writ of error for a further review.

The Omaha Boarding and Supply Company is a corporation organized under the laws of the State of Nebraska

306—25

for the purpose of "the taking of contracts for the equipping of boarding outfits and furnishing board and other supplies for laborers employed by railroads, railroad contractors and other persons or corporations, and furnishing laborers for the same," with the right to own real and personal property in connection with said business. It had been admitted to do business in this State and had an office rented at No. 6 Canal street, in Chicago, in which the clerical work was done in the taking of contracts for equipping boarding outfits and furnishing board and other supplies for laborers employed as aforesaid. It also had an office on the first floor of a building at No. 611 West Madison street, rented November 5, 1919, in which were stored under and back of the counters and in the rear of the office, skillets, pots, chinaware, cups, tin plates, platters, soup bowls, mattresses, coal stoves, desks, and other equipment of similar character used in its boarding and lodging camps. This latter place is a room about 18 x 20 feet, and is referred to in the evidence as the office and storeroom, and in which it conducts its business as an employment agency. It also has a similar storeroom rented in Omaha, Nebraska, of the same character as the one above described, which is approximately 20 x 40 feet. These are the only storerooms that it had at the time of the accident. It established various boarding camps on railroads and other places where laborers congregated for work in this State and in Indiana, for the purpose of boarding and furnishing supplies to such laborers. The railroad companies furnished the temporary buildings for the camps on the railroads, which were generally railroad cars. The camps were shifting or on the move constantly as the work of the laborers shifted, and the railroad companies moved the boarding cars on the railroads, together with all the camp equipment and the employees conducting the boarding houses or places or working therein for defendant in error. Defendant in error had boarding cars and temporary buildings at Gary, Indiana,

constructed by the parties for whom the laborers worked that it boarded. Three of the houses so constructed were about 22 x 50 feet, and these are the only houses that the evidence discloses defendant in error used for its purposes aforesaid. It had nothing to do with the work for which the laborers were employed by the railroads or by other contractors, except to maintain and operate the boarding houses and camps and move the camps from place to place for the purpose of feeding the laborers. It hired some of the laborers working for the contractors, but did that in its capacity as an employment agency and for the contractors. In conducting its business of boarding and lodging, it, of course, furnished the dishes, bedding, food, cooks, waiters, etc.

John D. Conover was employed by defendant in error as manager of its camps. His duties were to visit the camps and supervise the placing, opening and operation of them and of the removal of the same from place to place. On November 25, 1919, Conover took a cook and the cook's wife to one of the camps at Barrington, Illinois, about thirty-five miles from Chicago. They were taken in an automobile owned by W. W. Freeland, one of the officers of the company, and the automobile was driven by Harry Everndon, who was an employee of defendant in error but was then on his vacation. After leaving the cook and his wife at the camp Conover loaded two or three packages of burlap sacks and some papers and blanks into the automobile, all of which belonged to defendant in error, and with the driver started for Chicago, where he lived. On their way to Chicago, after dark and while it was snowing and raining, the automobile struck the abutment of a culvert, or something like that, and ran out of the road and struck a tree. There was a crash and a flash of fire and Conover was hurt and the automobile badly damaged. A garage man was called, who took Conover to Chicago in another automobile, and they arrived at his home about twelve o'clock that night. A

doctor was called, who dressed and sewed up his wounds, which consisted of several cuts on the head and arms and bruises and skinned places on his body and legs. His stomach was bruised and injured in the accident, and shortly afterwards a knot formed on the left side of his abdomen. He wore a silk elastic belt for a while and later used a truss. Conover returned to his work on the following Monday, six days after his injury, and remained in the employment of defendant in error in the same capacity in which he had been employed until June 17 following. On July 20, 1920, he went to a hospital and was operated on for hernia. The operation was scheduled as herniotomy. The operation was performed by an incision in the abdomen just to the left of the navel and the hernia was reduced. At the same operation and through the same incision the appendix was also removed. Peritonitis set in after the operation and Conover died July 26, 1920. The physician who performed the operation testified that the primary purpose of the operation was for hernia, and that the hernia could have been caused by a shock to the abdomen. Plaintiff in error testified that her husband did not have a hernia before the accident and that the hernia became apparent very soon after it.

The record shows that there was notice of the accident to defendant in error, as contended by plaintiff in error. The president of defendant in error visited Conover while he was injured and before he returned to work, and testified that he went out to see Conover and that he was present when he was examined by the doctor. These facts and other circumstances show the company had notice of the accident, as required by section 24 of the Compensation act.

The employment of Conover was broken in this case by the accidental injury. He was incapacitated from performing his work, and by reason thereof remained away from his employment, incapacitated, for six days. Under this state of the facts he or his widow had eighteen months in which to file his claim for compensation under section 24

of the Workmen's Compensation act, as amended in 1919, and the fact that he did not make claim for compensation within six months did not bar his right or his widow's right to compensation, if not otherwise barred.   (Laws of 1919, p. 551.)

It is apparent, under the facts and the decisions of this court, that Conover received an accidental injury arising out of and in the course of his employment.   At the time of the accident he was shown to be engaged in work for his employer although he was returning to Chicago after his day's work was done.   He was returning with the sacks, papers and blanks that belonged to the company.   The fact that he was returning in an automobile and not by railroad is of no significance, even if we should find, as defendant in error claims, that the direction of the company was that he should use the railroad trains in his travel while working at his employment.   The fact that he traveled in an automobile against the directions of his employer did not take him out of the line of his employment.   Violation of orders or directions of the employer by the employee does not defeat the right for compensation where such violation does not take the employee out of the sphere of his employment.   *Union Colliery Co.* v. *Industrial Com.* 298 Ill. 561.

There is no merit in defendant in error's contention that the Industrial Commission lost jurisdiction or authority to make an award in this case because of the fact that the stenographic report was not filed with it within the fifty days provided by the statute.   No such question was raised before the Industrial Commission.   Defendant in error did file a motion before the commission to dismiss this proceeding for want of jurisdiction and undertook to limit its appearance for that purpose.   The questions raised by the motion are the same questions raised by it before the circuit court and in this court, except the question upon which we are now passing.   Those questions bore upon the real merits of the case and there could be no limited appearance

for that purpose. In other words, the appearance of defendant in error was made for the purpose of discussing the merits of the case, and that was a bar to its ever raising the question that the stenographic report had not been filed in the time required. (*Pocahontas Mining Co.* v. *Industrial Com.* 301 Ill. 462.) To have raised this question it was necessary for it to have made its motion to dismiss on the ground that the stenographic report was not filed in time, and in such a motion it could have limited its appearance for the purpose of that motion only, as that motion, in substance, amounts to the claim that the commission had lost jurisdiction of the case. But a participation before the commission on a hearing upon the merits, even after such a motion has been made, amounts to an entry of the appearance of the mover in that motion and at once restores the jurisdiction or authority of the commission to hear the case.

The claim of plaintiff in error in this case is that she is entitled to compensation under the facts we have already found in her favor, because her proof establishes the fact that defendant in error and herself automatically came under the provisions of the Workmen's Compensation act. It is admitted that defendant in error had not come under the act by election. Her first contention is that the defendant in error was automatically bound by the act because the proof shows that it is engaged in an extra-hazardous occupation within the meaning of paragraph 1 of section 3 of said act, to-wit, the erection, maintaining, removing, remodeling, altering or demolishing of structures. It is clear under the facts in this case that defendant in error was not engaged in the erection, removing, remodeling, altering or demolishing of any structure whatever, within the meaning of said section. It built no houses for its business, and it therefore had no occasion for remodeling, removing, altering or demolishing any building. It had rented a storeroom in Illinois and it had a similar one rented in Nebraska. It

might be true that the buildings in which these storerooms were rented were structures, but it was not the business of any renter or of this defendant in error to maintain the buildings. The proof does not even show that the buildings were structures within the meaning of the statute. Defendant in error was therefore not engaged in the hazardous occupation of maintaining structures.

The second contention of plaintiff in error cannot be sustained,—that defendant in error is operating warehouses or general or terminal storehouses within the meaning of paragraph 4 of section 3. The storehouses of defendant in error are not general or terminal storehouses within the meaning of said section, because those storehouses furnish no hazardous employment to any laborer or employee or other person engaged therein or engaged or employed by defendant in error in any one of the businesses for which it was incorporated. The legislature did not mean to include under said section and paragraph of the statute any storehouse or place where goods or articles are stored, when, in fact, there is no hazardous occupation of any employee engaged or working about the same or in the same and for the owner of such storehouse. (*Armour & Co.* v. *Industrial Board,* 275 Ill. 328.) It will be found that in all the cases where this court has held that the owner of any storehouse or warehouse is placed automatically under said act, the facts disclosed that the employees of the owner were actually exposed to a hazardous or extra-hazardous business.

The foregoing disposes of all the contentions and reasons offered by plaintiff in error for holding that defendant in error is automatically under the Compensation act. It is not shown to be under the act, and is not bound by the act under the proof in this case.

The judgment of the circuit court must therefore be affirmed.

*Judgment affirmed.*