(No. 19400.— )

THE RALPH H. SIMPSON COMPANY, Plaintiff in Error, *vs.*
THE INDUSTRIAL COMMISSION *et al.*—(LINNIE CARR,
Defendant in Error.)

*Opinion filed December 20, 1929.*

CASSELS, POTTER & BENTLEY, (RALPH F. POTTER, and
CLAUD D. RABER, of counsel,) for plaintiff in error.

LEESMAN, ROEMER & SCHNELL, (CHARLES MARTIN, and RAYMOND C. SCHNELL, of counsel,) for defendant in error.

Mr. COMMISSIONER PARTLOW reported this opinion:

This case comes to this court upon a writ of error to review a judgment of the circuit court of Cook county confirming an award of $3700 made by the Industrial Commission under paragraph (a) of section 7 of the Workmen's Compensation act to Linnie Carr, the widow and sole dependent of David M. Carr, deceased, on account of his death on August 23, 1926, from injuries alleged to have been received by him on February 25, 1926, while in the employ of plaintiff in error, the Ralph H. Simpson Company.

Plaintiff in error insists that the evidence does not show that Carr suffered an accidental injury which arose out of and in the course of his employment and that there is no causal relationship between the alleged accident and the death.

The evidence shows that plaintiff in error was engaged in the structural iron and steel business in Chicago and had a contract to construct japanning ovens at Waukegan, Illinois. Carr was sixty-three years old, had been in the employ of plaintiff in error for over twenty-five years, and at the time of his injury was the foreman supervising the work, which began about February 15, 1926. Gerald D. Hammond testified that about February 25, at one o'clock P. M., he and Joe Millinise, who did not testify, were hoisting by means of a block and tackle a steel plate weighing about 500 pounds. They had it part way up, but it was too heavy for them to handle. Carr, who was standing by, took hold of the rope, and after giving one pull his hand "crunched down" and slipped. He let go of the rope and put his hand upon his back on the right side and said he had hurt his back. The witness did not see whether his foot

slipped. He testified there were pieces of iron all over the floor, and on account of the way Carr acted he judged he turned his ankle. Carr sat down on some crates, where he remained for the rest of the afternoon. Carr's son testified that in the evening, at his home, when Carr sat down in a chair he could not get up. Carr remained on the job for several weeks, but he only stayed two or three hours each day, when he was compelled to go home. An osteopath gave him some treatments without favorable results. On April 14, 1926, Carr was examined by Dr. Peter Clark. The doctor found what he called "a mass" on the right side of the back, but he was unable to determine whether it was in the kidney or in the muscles. The arteries were slightly stiffened. A definite diagnosis was not made that day but the doctor decided there was some kind of a tumor. Another examination was made a week or two later, with no additional result, and on May 25, 1926, Carr entered St. Luke's Hospital. X-ray pictures were taken and an operation was performed, which showed a lymphatic sarcoma. No effort was made to remove it, and the evidence shows that it was impossible to do so. The doctor testified that sarcomas are never ancient; that a sarcoma is a tumor made up of a substance like the embryonic connective tissue—tissue composed of closely-packed cells embodied in a fibrillar or homogeneous substance. They are caused from blows, falls, sprains, and strains on the muscles or tissues. The doctor found no abrasion, contusion, discoloration or swellings, but he testified that if there had been any there was ample time for them to disappear between the time of the injury and the examination. A hypothetical question was put to the doctor containing substantially the facts above recited, and he was asked whether from the facts stated there was any medical connection between the facts as stated and the sarcoma. He answered that there could be; that there was a possibility, or he would say there was a probability, of there being a connection. Carr left the

hospital on June 23, 1926, and died on August 23, 1926, at his home.

Dr. Schupman was a witness for defendant in error. Substantially the same hypothetical question was put to him as was put to Dr. Clark, and he answered that in his opinion it was possible for a man to strain the muscles of his back and get a sarcoma as a result of the strain; that a bruising or twisting of the muscles would set up a pathological condition which would cause a sarcoma of the muscles and the ligaments underlying; that the general cause of sarcoma is some injury to the underlying cell structure which causes a proliferation of the cells; that a strain would come within the definition of trauma because of injuries to the cells and the underlying structure; that a sarcoma develops rapidly, and if the accident happened on February 25 it could develop by April; that misplaced cell tissue is another theory advanced as a cause of lymphatic sarcoma; that after the injury the cells re-act and start to proliferate, grow rapidly and take on a wild embryonic type, and that there may be evidence of objective symptoms internally which are not visible to the eye. If the injury is internal it may not cause swelling or discoloration. If blood vessels were ruptured there would be a discoloration; that the fact that Carr worked after the injury would not have any bearing upon the question as to whether or not he sustained an injury to a cell which eventually led to lymphatic sarcoma, because the work would make the cells grow faster. He testified that he had treated 500 cases of this kind in the Cook county hospital.

Dr. Stevens, a witness for defendant in error, in answer to substantially the same question, testified that in his opinion the act of Carr in pulling on the rope would require enough muscular exertion, particularly in the muscles of the back, to excite and cause the cells of the lymphatic sarcoma to grow; that sarcoma, at the beginning, is an embryonic tissue made up of connective tissue—some

misplaced embryonic cells whose characteristics are connective tissues; that it is rather certain that there is a causal relationship between this accident and the lymphatic sarcoma from which Carr died; that it is as sure as one can possibly be of anything of that sort, and that there is an absolute connection between the two. He testified that the fact that Carr worked from February until April would not change his opinion that there was a causal connection between the injury and the death.

Dr. Wright, a witness for plaintiff in error, testified that he examined Carr on July 3, 1926, at his home. He was emaciated, was rather anæmic and was running a temperature. He had an incision in the right side about ten inches long, over the kidney. It was nearly healed but had an opening in the center from which a vile discharge of pus was oozing. The muscles on the right side were hard and board-like. He testified that Carr was suffering from some form of malignancy—from a tumor in the nature of a sarcoma. A hypothetical question was put to the doctor similar to the one put to the other doctors, and he answered that there was a remote possibility that there was a causal relation between the accident and the condition in which he found Carr; that a lympho-sarcoma is a new growth, and that the causes of sarcoma are purely a matter of theory. One theory is that it is the result of displaced tissue—that is, tissue growing where it does not belong. Another theory is that it is the result of trauma from a direct blow on the locality where the tumor starts. From the description he testified that Carr probably sustained a sprain; that he did not know whether a sarcoma resulted from the sprain; that it seemed approximately unlikely although there might be a remote possibility, but he could not be positive about it. He thought the death was directly due to sarcoma.

The burden was upon defendant in error to prove that an accidental injury was sustained which arose out of and

in the course of the employment and that death was the result of the injury. (*Frederick* v. *Industrial Com.* 329 Ill. 490; *Libby, McNeill & Libby* v. *Industrial Com.* 326 id. 293.) The finding of the Industrial Commission will not be disturbed by this court unless it is contrary to the manifest weight of the evidence. (*Armour Grain Co.* v. *Industrial Com.* 323 Ill. 80.) The evidence shows that prior to the day of the accident Carr was a strong, vigorous and active man. He had never been sick and had never required the services of a physician. The evidence of Hammond shows what happened at the time Carr pulled on the rope. He was never well after that time but grew steadily worse until his death. There is no question, under the evidence, but that he died from a lymphatic sarcoma. There is medical evidence which shows that the sarcoma was the result of the strain or sprain of the muscles of the back. If the death is fairly chargeable to an accident suffered in the course of his employment as an efficient cause, compensation may be awarded although the sarcoma existed prior to the accident, provided the sarcoma was aggravated or accelerated by the injury, but there must be a direct relation between the accident and the subsequent death. (*Springfield Coal Co.* v. *Industrial Com.* 303 Ill. 455; *Jones Foundry Co.* v. *Industrial Com.* 303 id. 410; *Keller* v. *Industrial Com.* 302 id. 610; *Centralia Coal Co.* v. *Industrial Com.* 301 id. 418.) If the act of Carr in pulling on the rope either caused a sarcoma or aggravated or accelerated a sarcoma which already existed, and his death resulted therefrom, his widow was entitled to compensation. We cannot say that the finding of the Industrial Commission as to the injury and cause of death is contrary to the manifest weight of the evidence.

Plaintiff in error insists that it did not receive notice of the accident within thirty days, as required by section 24 of the Compensation act, which provides that notice of the accident shall be given to the employer as soon as practica-

ble, but not later than thirty days after the accident, which notice shall give the approximate date and place of the accident, if known, and may be given orally or in writing, and that no defect or inaccuracy in such notice shall be a bar to the maintenance of the proceedings unless the employer proves that he has been unduly prejudiced thereby. Actual notice of the accident is sufficient. (*Heyworth* v. *Industrial Com.* 321 Ill. 298.) In *Valier Coal Co.* v. *Industrial Com.* 320 Ill. 69, it was held that where the manager of a mine was told by the employee's son that the employee was injured and could not work, the employer had sufficient notice that a claim for compensation might be made, citing *Parker-Washington Co.* v. *Industrial Board,* 274 Ill. 498, *Hydrox Chemical Co.* v. *Industrial Com.* 291 id. 579, and *Chicago Rawhide Co.* v. *Industrial Com.* 291 id. 616. In *Omaha Boarding and Supply Co.* v. *Industrial Com.* 306 Ill. 384, it was held that where the president of the employer corporation visited the employee after the injury and before he returned to work and was present when the employee was examined by the doctor, proof of such facts showed that the employer had notice of the accident. In *Halsted Co.* v. *Industrial Com.* 287 Ill. 509, it was held that where a stockholder and director of the employer company was present when the employee was injured, helped carry him into the shop and sent him to the hospital, proof of such acts showed that the employer had sufficient notice of the accident as provided by the statute.

Leonard D. Hook was the superior officer of Carr. He testified that he had a conversation with Carr in February, 1926, after the accident, in which Carr told him that he hurt his back. This conversation was within a week of the accident, and the evidence shows that Carr was working at this same place during the latter part of February, therefore plaintiff in error had notice, approximately, as to the time and place of the accident. Ralph H. Simpson, the vice-president of the plaintiff in error, was called

as a witness by the Industrial Commission. He testified that in April, 1926, he voluntarily called upon Carr at his home and had a conversation with him with reference to the cause of the injury from which he was suffering. It is apparent that this visit of Simpson, while it was more than thirty days after the date of the accident, was the result of prior notice which Simpson had received that Carr was confined to his home as the result of an injury. Simpson also testified that in June or July, 1926, after Carr returned to his home from the hospital, he again called upon him. He told Carr that if his condition was the result of the injury he had received witness wanted to compensate him for it. Simpson suggested that Carr get a good attorney to take action with reference to the matter. On both of these visits Simpson was not complaining that he had not received sufficient notice as required by the statute, but he was apparently acting upon a notice which he had received prior to those visits and was willing that Carr should be compensated for his injury. A son of Carr testified that after his father's death he went to the office of plaintiff in error to see Simpson. He did not see Simpson but saw Dreher, the chief engineer. He asked Dreher how the case for compensation was getting along, and Dreher said they were doing all they could to push the case along and were willing to help out. This is evidence that notice had been received, that it was being acted upon, that no complaint was made with reference to the character of the notice or the time it was served, or that plaintiff in error was unduly prejudiced by the character of the notice given, but, on the contrary, the evidence shows that plaintiff in error and its officers and employees had notice and were willing to make compensation for the injury sustained.

Plaintiff in error calls attention to certain cases which it is insisted hold that statements of the person injured are not competent to prove the cause of the injury unless such

statements are a part of the *res gestæ*, and that the Compensation act contemplates that the employer shall have notice of the accident either personally or by knowledge of such facts as will apprise him that the employee has sustained injuries of such a character as to entitle him to compensation and that he may reasonably expect that such claim will be made. No good purpose would be served in reviewing these cases, for the reason that the facts there presented are entirely different from those now before us. Under all the facts in evidence plaintiff in error had all the notice of this injury which the statute requires.

We find no reversible error, and the judgment of the circuit court is affirmed.

Per CURIAM: The foregoing opinion reported by Mr. Commissioner Partlow is hereby adopted as the opinion of the court, and judgment is entered in accordance therewith.

*Judgment affirmed.*