Stella A. Wallace, Claimant, Appellee, v. Rex Fuel Company et al., Appellants.

No. 42196.

October 17, 1933.

Huebner & Huebner, for appellants.

John T. Clarkson, for appellee.

Stevens, J.—On September 28, 1932, James Wallace, the decedent, was employed by appellant to operate an electric motor in a coal mine owned by it. His particular duty was to bring cars loaded with coal to the shaft and to take unloaded cars away. The route, starting point, and destination of the empty cars has little materiality in this case, except as it bears directly upon the cause and place of the accident. The fatal injuries were received by Wallace on October 1st, or three days after he was employed.

From fifteen to eighteen cars, coupled together, whether empty or loaded, were customarily moved by the electric motor operated by the deceased. The length of the haulage exceeded 2,000 feet. The trip each way along the haulage was over and along the same

line. At the time the deceased was employed in the mine, he was informed that a bell must be attached to the rear car hauling from and to the shaft and that the motor should at no time be moved without the bell being so attached. The requirement was one of the rules of the appellant which was strictly observed in the mine. While en route from the mouth of the shaft to his proper destination in the mine with a train consisting, as Wallace supposed, of fifteen empty cars, the rear car to which the bell was attached became uncoupled and was later found to be missing by Wallace. The train, in fact, consisted of sixteen cars. It was a further rule of appellant that, if the bell became detached from the car, or if the car became uncoupled, it was the express duty of the motorman to return carefully with his motor alone and locate the car or bell. The deceased did not observe this latter rule, but told a fellow employee he would take a chance and started with a train of loaded cars. A portion of the route was down a 2 per cent incline. While on his way, the motor collided with the empty car to which the bell was attached and which was directly in the path of his journey, with the result that Wallace was killed by the knocking down of a large quantity of slate from the roof of the mine.

As argued by counsel for appellant, the vital and determinative question in this case is the familiar and frequently recurring one, to-wit: Did the injury, resulting in the death of the employee, arise out of and in the course of his employment? There is one phase of the question involved on this appeal which presents an important variation from the usual proposition which, previously, has not been precisely passed upon by this court. There is no dispute in the evidence or the fair and proper inferences to be drawn therefrom. The findings and conclusions of the industrial commissioner at this point will be strictly observed and followed throughout. The proposition which we are called upon to decide is, therefore, necessarily one of law.

The industrial commissioner based his conclusions of law upon three prior decisions of this court: Christensen v. Hauff Bros., 193 Iowa 1084, 188 N. W. 851; Kraft v. West Hotel Co., 193 Iowa 1288, 188 N. W. 870, 872, 31 A. L. R. 1245; and Enfield v. Certain-teed Products Co., 211 Iowa 1004, 233 N. W. 141; and other similar cases.

We are also confronted on this appeal with the firm contention of appellant, that the pronouncements in the foregoing cases, sup-

ported by a long line of citations from other jurisdictions, are conclusive on this court in this case. It is, of course, conceded by appellant that decedent was employed to operate the electric motor in the mine and along the route he was pursuing when the collision and consequent fatal injury occurred. The contention is that, because of his violation of, and failure to observe, the rule of his employer as to the presence and use of the bell, he was at the instant of the collision at a place where he could not reasonably be and performing an act which he could not reasonably do; that, as a consequence, his fatal injuries did not arise out of and in the course of his employment; and that his act of disobedience placed him outside of these essentials of recovery.

The employee in Christensen v. Hauff Bros., supra, had been furnished a ticket by his employer from Hinton to Struble over a line of railway. While attempting to board a moving freight train by climbing upon a flat car attached to the train, which was in motion, he fell and was fatally injured. He had been directed by his employer to return on this particular train. This court held that he was not entitled to compensation because, at the time he received the injuries, he was performing an act not reasonably required by his employment and that there was no causal connection between such employment and the injuries which resulted in his death and that, for this reason, the fatal injuries did not arise in the course of his employment.

The facts involved in Kraft v. West Hotel Co., supra, are wholly different from the facts involved in the Christensen case. The claimant in the Kraft case was a chambermaid employed at the West Hotel in Sioux City. Her hours of work were from 7:30 in the morning to about 3 p. m. On the occasion of her injuries, she had been curling her hair in her room at the hotel by the use of an alcohol lamp. The accident, which resulted in her being severely burned, occurred about 9:30 p. m., long after the hours of her employment for the day had terminated. This court held that the claimant was not entitled to compensation for the reason that the injury did not arise out of or in the course of her employment. It is in the course of the opinion in this case that the following language is used:

"An accident cannot be said to arise out of the employment when it is due to a new and added peril to which the employee by his own conduct has needlessly exposed himself."

Enfield v. Certain-teed Products Co., supra, presents a wholly different state of facts. The claimant in that case received his injuries while riding in an elevator carrying a motor from the first to the second floor of the building in which he was employed. He entered the elevator in disobedience to a rule of the company which strictly forbade his doing so. This court held that he knew of the rule prohibiting him from riding on the elevator and that, notwithstanding he sought to excuse his act upon the ground that he was engaged for the benefit of his employer, the injuries did not arise out of or in the course of his employment.

It will be observed from the foregoing that in each of the three cases the employee was either at a place where he was forbidden to go, or could not reasonably be expected to go, or that the period of employment was terminated for the day; that is to say, that in both the Christensen and Enfield cases, the employee was at a place either where he could not be reasonably expected to be, or that he was at a place strictly forbidden by the rules of his employment. We shall later contrast the situation in the above cases and the facts in the case at bar.

A large number of pronouncements from other jurisdictions are cited and relied upon by appellant. We shall give proper consideration to some of these.

In Terminal R. Ass'n v. Industrial Commission, 309 Ill. 203, 140 N. E. 827, 828, a state of facts somewhat similar to those presented in the Christensen case was involved. The claimant lived at Venice and worked for his employer at Brooklyn. The employer provided transportation for its employees from their homes to the roundhouse in which they worked, in what was known as "cab trains". These trains carried no passengers other than employees. The employee boarded one of the cab trains in the morning but got off at what was known as the Southern Railroad crossing at Brooklyn, where the train customarily stopped. Employee, with others, was in the habit of leaving the cab train at this point. This was known to the train crew. Encountering a freight train standing on a crossing, which intercepted his line of travel, he attempted to pass under the train. It started before he was through and cut off both his legs below the knee. The court held that he was engaged in a voluntary act not anticipated or known to his employer and outside of the duties for which he was employed and that he was not entitled to compensation. The court said:

"Where an employee chooses to go to a dangerous place where his employment does not necessarily carry him, and where he incurs a danger of his own choosing and one altogether outside any reasonable requirement of his employment, it cannot be said that such risk was an incident to his employment. * * * An employee cannot accept such unnecessary risks and dangers without taking him outside the scope of his employment."

In Pierre v. Barringer, 149 La. 71, 88 So. 691, the evidence showed that the employee, who was engaged as a fireman in a saw-mill and whose employment did not take him in the vicinity of a circular saw on the premises, severely injured his hand by coming in contact with said saw. The court held that at the time of such injury he was not acting within the scope of his employment. The court said:

"He had deserted his post of duty at the furnace, and wandered some distance from the boiler when he met with the accident."

In Webre v. Caire & Graugnard, 10 La. App. 775, 123 So. 168, 169, an employee in a sugar mill met his death while attempting to board a train which his brother, who was the foreman under whom he worked, forbade. The rules of the company prohibited all employees, other than the train crew, to ride thereon. For six hours preceding the accident, the employee and his brother were absent and not working and were not required to return until time for the next shift. The court held that the injury did not arise out of or in the course of his employment, and said:

"Furthermore, we cannot see how it can be held that the injury arose out of the employment, or was in any way incidental thereto. The employer had no control whatever over plaintiff's movements. Webre had voluntarily left the premises and gone off on business of his own. The employer had nothing whatever to do with his movements until his return to the premises."

The claimant in Gifford v. T. G. Patterson, Inc., 222 N. Y. 4, 117 N. E. 946, 947, 6 A. L. R. 576, was employed as a night watch-man on the premises of his employer. It was his duty to go around the building and to regularly punch a clock. In the front of the building there was a chute running from the second floor to the pavement down which it was customary to send the goods to be put on the wagons. The employee obtained a chair and, while sitting

in a doorway on the second floor and dozing, fell down the chute and was killed. The court held that he could not recover. The court said:

"He was employed to watch the premises. Instead of doing so, he prepared for himself a comfortable position and slept. * * * When an employee is injured through some act of his own, not an incident to his employment, and not authorized or induced by his employer in connection with his employment, the injury does not arise out of and in the course of his employment within the meaning of the statute."

The instruction violated in Reimers v. Proctor Pub. Co., 85 N. J. Law 441, 89 A. 931, was the taking of an automobile, the use of which the employee had been forbidden, for the purpose of distributing papers. The case is of little value and in reality presents only a question of fact.

The employee in Shoffler v. Lehigh Valley Coal Co., 290 Pa. 480, 139 A. 192, 193, was employed as a spragger or brakeman in moving cars in a mine. His duties were specific and well understood by him. On the day of the accident, a locomotive had been left standing on a crossover track by the engineer. The employee went on board the engine, and, while attempting to start it, it backed, fell over, and the employee was killed. The court denied compensation, saying:

"Though all the above essentials for compensation be present, 'course of employment' does not include * * * (b) injuries received in the commission of an act which is in direct violation of the law; or (c) an act contrary to the positive orders of the employer."

The employee in Lumaghi Coal Co. v. Industrial Commission, 318 Ill. 151, 149 N. E. 11, 13, was employed as a mine examiner; his duties being to examine the mine at night and do such necessary repair work as would place the mine in a safe condition for the miners to work in. The employee had to make a trip in the mine of about one mile. He was forbidden to use the motors but, on the occasion in question, he went where the motors were kept for the purpose of taking one. In attempting to start it, it threw him over and cut off his leg. The court said:

"Where he [the employee] incurs a danger of his own choosing, outside of any reasonable exercise of his employment, the act is not an incident to the employment. The employer is not liable for every accidental injury which may happen to an employee during his employment. The employer is not liable where the employee exposes himself to a danger which is not one arising from the employee's employment."

The court in Hurley's case, 240 Mass. 357, 134 N. E. 252, said:

"The claimant had occasion, in the course of his work at the Worcester Gas Works, to go from the blower room to the forge to get some bars. To go to the forge the natural course was to leave the blower room, go down the stairs, out into and across the yard and enter another building. He needed a raincoat, which he found on a beam. He stepped out on the beam, got his coat and put it on. The beam 'was connecting the two blower rooms'. He made an effort to walk along the beam, which was about a foot wide and about a foot thick, for perhaps 20 feet, and stepped through what seemed to be a broken opening in the partition. The partition was made of old boards and there was no roof over the opening between the two buildings. He started to walk on the beam from the opening in one building to the opening in another building, holding on to another beam 'which was running "alongside".' The beams were for the support of the building. If he had reached the other room he would have had to go down stairs and across the yard to the forge. He fell from the beam about 20 feet and received severe injuries. It was not within the scope of the claimant's work to walk on the beam. Every circumstance demonstrates that the beam was not a place where his employment called him either directly or incidentally. He voluntarily encountered an added risk not within the contemplation of his contract of service. Even though he had to get on the beam for the raincoat, that was no warrant for using the beam as a footpath into regions where manifestly no employee was justified in trying to travel. The case is covered by Borin's case, 227 Mass. 452, 116 N. E. 817, L. R. A. 1918A, 217; Rochford's case, 234 Mass. 93, 124 N. E. 891; Haggard's case, 234 Mass. 330, 125 N. E. 565; Bolden's case, 235 Mass. 309, 126 N. E. 668; Koza's case, 236 Mass. 342, 128 N. E. 400. The claimant 'went into a territory with which he had nothing to do' as employee."

Other cases similar in character are cited: Brusster v. Ind. Acc. Commission, 35 Cal. App. 81, 169 P. 258; Smith v. Corson, 87 N. J. Law, 118, 93 A. 112; Brokmeier v. Lamb, 170 Minn. 143, 212 N. W. 187.

Questions of fact and findings of industrial commissioners are involved in some of the above cited cases. It is significant that in each and all of the cases, the employee, when the injuries were received, was acting without the scope of his employment. One or more of the cases are quite similar in character to Kraft v. West Hotel Co., supra. None of the cases cited from other jurisdictions is readily distinguishable from the foregoing cases in their facts or on principle.

It is urged by counsel for appellee with equal vigor and enthusiasm that the foregoing cases, including our own, are readily and obviously distinguishable on both fact and principle.

Whether the deceased, at the time the fatal injuries were inflicted, was legally within the terms of his employment at the place of and doing the things he might reasonably be expected to do, he was physically; that is to say, he was riding the motor at the very place and hauling the loaded cars therewith to their destination in exact accord with his employment, with the single exception that he was doing so in violation of the rule which prohibited him from operating the motor in the absence of the bell on the rear car. The question is: Did his violation of, and disobedience to, this rule of his employer carry him so far outside of his employment so that it must be held that his injuries did not arise out of and in the course thereof?

This precise phase of the question is one of first impression in this jurisdiction. Let us, therefore, examine a few of the pronouncements of other courts thereon. At the outset of the following, as well as the foregoing, cases, it must be remembered that the decisions referred to are necessarily more or less affected, if not controlled, by local statutes.

In Blocton Cahaba Coal Co. v. Campbell, 219 Ala. 529, 122 So. 806, 807, it was the duty of the employee to dig coal in a certain room, which, after causing an explosion to loosen the coal, he left. He re-entered it too soon with an unguarded lamp on his cap, with the result that an additional explosion ensued causing his death. The rule of the company forbade an employee to return to the room until permitted by his foreman to do so. The court said:

"We think the rule as quoted by counsel from Honnold on Workmen's Compensation, p. 390, section 113, is correct and demonstrates that the disobedience to the rule in question did not remove him from the course of his employment. It says: 'Disobedience to an order or breach of a rule is not of itself sufficient to disentitle a workman to compensation, so long as he does not go outside the sphere of his employment. There are prohibitions which limit the sphere of employment, and prohibitions which deal only with conduct within such sphere. A transgression of a prohibition of the latter class leaves the sphere of employment where it was, and consequently will not prevent recovery of compensation. A transgression of the former class carries with it the result that the man has gone outside the sphere.' * * *

"The deceased here did not go outside the sphere of his employment, but violated a rule or order dealing with conduct within such sphere only."

In the course of the opinion in Kolaszynski v. Klie, 91 N. J. Law 37, 102 A. 5, in which case the employee, in violation of her instructions, lighted a fire by the use of wood alcohol, the court said:

"That it was by accident is not questioned. It was a fortuitous event, which might indeed be expected but might never happen. We must conclude that it arose out of and in the course of the employment unless the disobedience of orders prevents that conclusion. The disobedience of orders in this case was a disobedience of orders as to the way in which the work should be done. The work itself was the very work decedent was expected to do. It was done at the very place it was meant to be done."

Again, it was said in Morris v. James Bell Co., 160 A. 211, 10 N. J. Misc. 619:

"That a workman's disobedience of an order as to the way in which the work should be done does not result in the conclusion that the injury did not arise out of the employment. If there was a disobedience of an order in this case, it was, as was said by Mr. Justice Swayze in Kolaszynski v. Klie, 'a disobedience of orders as to the way in which the work should be done. The work itself was the very work decedent was expected to do. It was done at the very place where it was meant to be done', and in that case the employer

was held liable, the court pointing out in that case that it differed from Reimers v. Proctor Pub. Co., 85 N. J. Law 441, 89 A. 931, and Smith v. Corson, 87 N. J. Law 119, 93 A. 112."

To the same effect and equally persuasive are the following cases: Union Colliery Co. v. Ind. Commission, 298 Ill. 561, 132 N. E. 200, 23 A. L. R. 1150; National Car Coupler Co. v. Marr, 69 Ind. App. 206, 121 N. E. 545; Standard Elkhorn Coal Co. v. Stidham, 242 Ky. 228, 46 S. W. (2d) 120; Omaha Boarding & Supply Co. v. Ind. Commission, 306 Ill. 384, 138 N. E. 106; Chicago Rys. Co. v. Ind. Board, 276 Ill. 112, 114 N. E. 534; Frint Motor Car Co. v. Ind. Commission, 168 Wis. 436, 170 N. W. 285; Imperial Brass Mfg. Co. v. Ind. Commission, 306 Ill. 11, 137 N. E. 411, 26 A. L. R. 161; Northern Ind. G. & E. Co. v. Pietzvak, 69 Ind. App. 24, 118 N. E. 132; Industrial Commission v. H. Koppers Co., 68 Colo. 596, 185 P. 267.

As suggested in some of the foregoing cases, it must be said that the deceased in the case before us was injured at the very place he was expected to be and while performing the precise service he was expected to perform. That he was negligent, grossly so, may be conceded. This, however, will not defeat recovery. The doctrine of an added peril declared in the Kraft case was dictum in its purest aspect in a case not in any particular similar to the one at bar. To hold that the violation of, or disobedience to, a rule of the employer which results in injury to the employee while he is engaged in performing duties clearly within the scope of his employment and at the very place where he was expected and required to work, would be to establish a rule susceptible to great abuse. The line of demarcation would not only be difficult but impossible to draw. On the other hand, a rule thus established would tend to weaken the observance by employees of wholesome and necessary rules governing the conduct and operation of the business in which the employment exists. Possible evils would result under either conclusion. The public policy inherent in our compensation laws strongly favors the employee. Whether the act of the deceased was negligent only, it seems to us, is not necessarily decisive. The rule that an employee who is at a place and performing acts where he may not reasonably be, or perform, is without application to the facts of this case. If compensation be denied in this case, it must be upon the theory that, by the violation of and disobedience to the rule, the injuries causing the death did not arise out of and in the

course of the employment. To so hold is to ingraft a fiction upon the law enacted in large measure for the benefit and protection of employees. Nothing said herein is in conflict with our prior decisions. The respective rules which we have discussed apply to different facts. We are not at all disposed to recede or depart from our pronouncements in the cases cited. The nomenclature and essentials of our compensation laws are too familiar to require discussion of other propositions necessarily involved in this case.

It is the conclusion of the court that, notwithstanding the violation of the rule, the resulting death of the employee arose out of and in the course of his employment. This conclusion is in harmony with the long line of cases cited supra.—Affirmed.

ALBERT, C. J., and MITCHELL, ANDERSON, and KINTZINGER, JJ., concur.