Before STATE INDUSTRIAL BOARD, Respondent.

HELEN STRAND, Respondent, *v.* HARRIS STRUCTURAL STEEL CO., INC., Appellant.

Third Department, May 8, 1924.

Workmen's compensation — riveter on structural steel work, engaged in heating rivets at forge on scaffold, built fire in mortar tub and threw some liquid from can on it — can exploded and employee suffered burns which caused his death — open fire to keep riveter warm was not permitted on particular job nor customary — liquid was not furnished by employer — injury did not arise out of employment.

A riveter engaged on structural steel work to heat rivets at a forge on a scaffold on the sixth floor of a building in process of erection, who built a fire in a mortar tub on the scaffold, apparently for the purpose of warming himself, threw on the fire some liquid from a can and suffered burns, caused by the explosion of the can, from which he subsequently died, did not receive an injury arising out of his employment, since it appeared that his employer did not permit or

authorize him to build an open fire other than that in the forge for the purpose of warming himself, nor did it supply him with the inflammable liquid, nor was such liquid necessary for use in the work in which he was engaged, and furthermore, it was not customary on structural steel jobs for riveters to have a fire, but, on the contrary, the custom prevailing in the trade forbade the making of fires during working hours.

APPEAL by the defendant, Harris Structural Steel Co., Inc., from an award of the State Industrial Board, made on the 7th day of August, 1923.

*Rosenthal & Heermance* [*Charles K. Allen* and *Clayton J. Heermance* of counsel], for the appellant.

*Carl Sherman, Attorney-General* [*E. C. Aiken, Deputy Attorney-General,* of counsel], for the respondents.

VAN KIRK, J.:

The employer was an erector of structural steel. The employee, Frank Strand, was an ironworker, receiving fifty dollars per week. He was injured January 17, 1923, and died from his injuries January 19, 1923, leaving a widow and three children. The accident happened at Seventy-first street and Broadway, New York city, on the sixth floor of the building being erected. He was heating rivets at a forge on a scaffold eight planks wide. He brought some wood to the scaffold and built a fire in a mortar tub. He was not seen to bring the tub, but there was no use for it on the scaffold other than for this fire. This fire was not used in his work in any way. He threw some liquid from a can upon this open fire; there was a sudden blaze; the can exploded in his hand and ignited his clothing. But one man was working with him on this platform; he was not injured. He attempted to extinguish the fire, but could not. This liquid or substance from the can was not used in any way in his work and there was no proof that any such can or liquid had been seen on the job before. He had built the fire about ten minutes before the accident. No one saw the fire except this coemployee and he had never seen any riveters have such a fire on this job. This was the first cold day they had had during the winter and apparently he built the fire for his own convenience and comfort. There was some heat coming from the forge. The superintendent and general manager testified that he had been engaged in this structural steel business for some years and had never seen a riveter have a fire to keep him warm in cold weather on the job; that a riveter is the only man on the job who has heat, this heat coming from the forge; the employer furnishes no liquid or inflammable substance to the riveters or to men working on the job and no permission was given to have fires other than in the forge. He had never allowed fire other than in the

forges to be used on the work. Charles Hudson, who had been an ironworker for twenty-three years, but not on this job, was asked what the custom is on such work in reference to keeping a hose thawed out and keeping the machinery running to do welding. He answered that the most practical thing in cold weather when the hose freezes up is to use alcohol. On big jobs they put it into the compressor; on small jobs they pour it into the hose. Asked if it is the custom to build a fire to keep warm, he answered, that he had worked on operations where they had had fires all day long to keep the men warm; but it is the custom on large jobs to forbid the making of fires during working hours. He knew nothing about this employer or its work and nothing about its rules.

It is found: " The building of a fire by the deceased in this case by means of which he and his fellow employees might keep warm was a natural incident of the particular work in which claimant was engaged and one not forbidden nor frowned upon by employers who are engaged in the fabrication and erection of structural steel."

In *Saenger* v. *Locke* (220 N. Y. 556) the court said, to justify an award, " the injury must be received as a natural incident of the work. It must be one of the risks connected with the employment, flowing therefrom as a natural consequence and directly connected with the work." In the instant case it appears that, whatever the inflammable material was which the deceased threw upon the fire, it was not furnished by the employer and was not used in connection with any work he was doing. The fire in the mortar tub was built for the comfort and convenience of the deceased. It was not the custom to have fires other than in the forges on this job and it is not shown that at any time such a fire as the employee built was ever used. There is no explanation why he threw this substance on the fire. The testimony that sometimes alcohol is used to keep a hose from freezing is not connected in any wise in this case with the work of the deceased. So far as the evidence shows there was no use for a hose on or near this platform. The deceased was employed to heat rivets and toss them to his coworker. His injury did not arise directly or indirectly out of this work. He was injured through his own act not authorized or induced by his employer in connection with his work. (*Gifford* v. *Patterson*, 222 N. Y. 4.) The proximate cause of the accident was the building of the fire in the tub and the throwing of the inflammable liquid thereon. These acts were not natural incidents of his work; they did not enable him the better to do his work or discharge his duties; nor did they grow out of any emergency where he was justified in doing them to serve some interest of his employer. The inflammable liquid which he used was not furnished by the employer

and its use was not in any sense for the interest of his employer. (*DiSalvio* v. *Menihan Co.*, 225 N. Y. 123.) We cannot conceive how this injury was received from any condition which was inherent in the nature of his employment, or naturally incidental thereto. It was not suffered through a risk connected with the employment. The most that can be said in support of the award is that Strand was at the place of the accident because of his employment, but this is not sufficient to show that the injury arose out of his employment. In *Scholtzhauer* v. *C. & L. Lunch Co.* (233 N. Y. 12) the court said: " To justify the State Industrial Board in making an award, the injury complained of must have arisen both out of and in the course of the employment. It must have been received while the employee was doing the work for which he was employed, and in addition thereto, such injury must be a natural incident to the work. It must be one of the risks connected with the employment, flowing therefrom as a natural consequence and directly connected with the work." We think there is no evidence in this case supporting the finding made, or which brings the case within the Workmen's Compensation Law of 1922.

The award should be reversed and the claim dismissed, with costs against the State Industrial Board.

All concur.

Award reversed and claim dismissed, with costs against the State Industrial Board. _____