Before STATE INDUSTRIAL BOARD, Respondent.

IVAR JOHNSON, Respondent, v. SEABURG MANUFACTURING COMPANY, Defendant, Impleaded with JAMESTOWN MUTUAL INSURANCE COMPANY, Appellant.

Third Department, January 7, 1925.

**Workmen's compensation — claimant was injured while using buzz planer — claimant was hired to spray varnish — claimant was not authorized to use planer — injury did not arise out of and in course of employment.**

The injury which the claimant suffered while he was using a buzz planer in the plant of his employer did not arise out of and in the course of his employment, since it appears that the claimant was hired to spray varnish and shellac on table tops; that he was not authorized to use the buzz planer and that at the time of the accident he left the floor on which he was engaged and went to the floor below without authority and there attempted to plane a block of wood.

APPEAL by the defendant, Jamestown Mutual Insurance Company, from an award of the State Industrial Board, made on the 7th day of March, 1924, and also from an award made on the 9th day of June, 1924.

*Thrasher & Leonard* [*John S. Leonard* of counsel], for the appellant.

*Carl Sherman*, Attorney-General [*E. C. Aiken*, Deputy Attorney-General, of counsel], for the State Industrial Board.

VAN KIRK, J.:

The employer was a manufacturing concern, making cabinets and table tops. The claimant was a varnish sprayer. He used a hand machine or tool to spray varnish and shellac on the table tops. The award is contested on the ground that the injury is not the result of an accident arising out of and in the course of the employment. While spraying the underside of a table top it was customary to use a block or blocks to raise the top. These blocks it was customary to get from the crating or packing room. Claimant's work was upon the third floor. On the next floor below was the cabinet room, in which was a machine called the buzz planer. Claimant says that the necessary blocks were usually near the sprayer, but on this occasion he went down to the cabinet

16

room. He says he needed three blocks; he had two and he went to the buzz planer to plane down the third one. The buzz planer was not running and he started it up. He says he never before had had occasion to go down and plane a block; nothing had been said to him about going down. Later he says he had on former occasions gone down and planed blocks. When asked to explain why he was planing this piece, he says: "I was going to plane it off, that was all, and make it narrow there, that is all. Q. Was it necessary to plane that block in order to use it? A. No, it was not necessary but I just went down there. Q. It was not necessary to plane that block for what you were going to use it for? A. No. Q. You went down to plane it for what's the fun of it? A. No, for the machine. Q. To see how it would work? A. Yes. * * * Q. Why did you plane it then; why didn't you use it as it was? A. Just to plane that off, that was all. Q. Well, why; what was the object of planing it? A. I don't know. Q. You must have had some object; why didn't you use it just as it was; would it work just as well in the size and shape it was as it would work after it was planed? A. It would work just as well but it would be a little too high. Q. Then answer the question; why did you plane it off, or attempt to? A. To get that there piece off from there, that is all. Q. Would it work any better with that piece off after it was planed? A. I suppose it would. Q. Did you think it would? A. Yes. Q. Was that why you started to plane it? A. Yes * * *. Q. Why didn't you go out on this pile of scrap that the foreman has described here and pick up one out there? A. There is no blocks out there that size; they have them that long [indicating] and longer. Q. Didn't you say a moment ago you had been out there and got blocks? A. Yes, I got blocks but not that size. Q. Did you have to have blocks this size? A. Certainly for small tops."

The sprayers were not called upon to use and were not authorized to use the buzz planer. This claimant had not been specifically forbidden to use it, but in no wise had he been permitted to use it. He with other sprayers had been informed that they should get such blocks as they needed from the crating or packing room. The buzz planer was a dangerous machine. It was not upon the floor on which claimant was employed to work. The use of it was neither directly or indirectly within his employment. Blocks were used simply to raise the top while the under side was being sprayed. There is no suggestion in the evidence that it was ever necessary to plane a block in order to use it as claimant intended using this one. When injured the claimant was doing work which he was not employed to do; it was work entirely unauthorized.

It was not directly or indirectly a part of his employment, nor was it incidental to his employment. It is inconceivable that one of the risks of spraying work, such as here described, is in the use of a dangerous machine to plane down blocks for propping table tops, when the only purpose of such blocks is to raise the top and when these blocks can be supplied from refuse heaps. Neither the claimant, the employer nor the insurance carrier could have anticipated that the risk incurred in using a buzz planer was one of the risks of a varnish sprayer. (*Strand* v. *Harris Structural Steel Co., Inc.*, 209 App. Div. 310; *Ebberman* v. *Walther & Co.*, Id. 248.)

The award should be reversed and the claim dismissed.

All concur.

Award reversed and claim dismissed, with costs against the State Industrial Board.