GRABMAN *v.* FRANCE STONE CO.

1. APPEAL AND ERROR—QUESTIONS REVIEWABLE—TRUCKER—OCCA-
SIONAL LABOR.

Question of whether or not plaintiff's decedent, a trucker, was
an independent contractor or employee of defendant con-
tractor *held*, unnecessary to decision where controlling ques-
tion is whether or not work done by decedent at time of fatal
accident was volunteered or performed as an occasional paid
laborer.

2. WORKMEN'S COMPENSATION — TRUCKER — OCCASIONAL LABOR —
GREASING CONVEYOR.

Decedent who did trucking for defendant stone company and
some occasional ground work in cleaning up the yard for which
he was paid *held*, not to have suffered a fatal accident arising
out of and in course of employment when he fell while greas-
ing conveyor 40 feet in the air.

3. SAME—AMBIT OF EMPLOYMENT—COMPETENCY OF EMPLOYEES FOR
HAZARDOUS WORK.

An employee may not depart from the ambit of his employment
and be compensated for injuries sustained thereby especially
where the work to be done is hazardous as the employer must
have the right to protect himself against liability for accident
by selecting competent persons to do it.

Appeal from Department of Labor and Industry.
Submitted April 16, 1937. (Docket No. 115, Calen-
dar No. 39,158.) Decided June 7, 1937. Rehearing
denied September 1, 1937.

Elizabeth Grabman, widow of Charles Grabman,
deceased, presented her claim for compensation
against France Stone Company, employer, and
Ætna Casualty & Surety Company, insurer, for
death of her husband while in defendant's employ.
Award to plaintiff. Defendants appeal. Reversed.

*Samuel Charfoos* and *Benjamin Gantz,* for plaintiff.

*Kerr, Lacey & Scroggie,* for defendants.

FEAD, C. J.   Defendant France Stone Company sold stone.   Kullen was in charge of the yard. Charles Grabman owned two trucks, one driven by himself and the other by his son Alfred.   Both delivered   stone   for   defendant   to   its   customers. Charles occasionally trucked for others and Alfred made deliveries for several concerns.

Charles spent practically the whole of each working day at defendant's yard or in making deliveries for it.   Alfred was there a considerable portion of the time but not so much as his father.   They did such trucking as defendant had for them.   Sometimes they were busy all day and sometimes had no work at all.   Grabman maintained the trucks as to repairs, oil, gas, etc.   They were paid a specific sum for each delivery, according to weight and distance.   Usually they were paid weekly, on computation of delivery slips, but sometimes advances were made to them for gas and oil.

At times when there was no trucking, defendant hired Charles Grabman to do work around the yard, cleaning it up.   It paid him 50 cents per hour for such work.   In the year immediately preceding his death he earned $27 in this way.   Grabman liked to be busy; and during the slack periods he often did voluntary work in cleaning up the yard.   He received no pay for such work nor was it done at the request or order of defendant.

April 24, 1935, Kullen's son informed him that he intended to grease the conveyor and Kullen acquiesced.   The conveyor was 40 feet in the air. A short time later Charles Grabman, while greas-

ing the conveyor, with Alfred watching him, fell and was killed. The record does not indicate why Grabman undertook the work, but it is undisputed that Kullen did not order or request him to do it and did not know he intended to do it or was doing it until Alfred reported that his father had fallen. Alfred said his father had greased the conveyor on another occasion, some 10 months before, but Kullen had no knowledge of it.

Defendant appeals from an award of compensation for Grabman's death.

Defendant urges that Grabman was an independent contractor, not an employee. The case differs from trucking cases cited by plaintiff in the lack of continuity of work and pay and other circumstances here indicated. But we need not pass upon the point because there is another plain one involved.

Assuming, but not deciding, that Grabman, in trucking for defendant, was its employee, it nevertheless appears that, as such, he had no other duties than to load his truck and make deliveries. As an occasional paid laborer, his duties had been on ground work and had nothing to do with greasing the conveyor. The accident occurred in doing a job for which he had not been hired but which was a voluntary act, not ordered or acquiesced in by the employer or known to it. Did the accident arise out of and in the course of Grabman's employment?

The department relied upon *Mann* v. *Board of Education of City of Detroit,* 266 Mich. 271, where the principal of a school was injured while en route to an educational conference and was awarded compensation on the principle that the employer permitted his attending the conference and his attendance was for the benefit of the employer as well as

himself. The case is not in point because here there was no permission to do the act.

The applicable rule was stated in *Bischoff* v. *American Car & Foundry Co.,* 190 Mich. 229, 234, as follows:

"And if a workman, when there is no emergency, should, of his own volition, see fit to intermeddle with something entirely outside the work for which he is employed, he ought not to be allowed compensation upon the mere plea that he thought his act would be for the benefit of his employer. That plea may be of value under some circumstances, but it cannot authorize an employee to voluntarily take upon himself the performance of work for which he was not employed."

The rule is sound. It may be modified in case of an emergency or in other special circumstances. But, fundamentally, the option is not in the employee to extend the course of his employment upon the sole ground that his act may be for the employer's benefit. An employer has the right to prescribe the duties of an employee. If work is hazardous, he must have the right to protect himself against liability for accident by selecting competent persons to do it. Employees may not impose liability upon the employer by leaving the work they were hired to do and voluntarily, and without his knowledge or acquiescence, doing something else.

There are no decisions in this State precisely in point on the facts. But the following illustrate the general idea that an employee may not depart from the ambit of his employment and be compensated for injuries sustained thereby. *Bischoff* v. *American Car & Foundry Co., supra; Buvia* v. *Oscar Daniels Co.,* 203 Mich. 73 (7 A. L. R. 1301); *Spooner* v. *Detroit Saturday Night Co.,* 187 Mich. 125 (L. R.

A. 1916A, 17, 9 N. C. C. A. 647); *Sichterman* v. *Kent Storage Co.*, 217 Mich. 364 (20 A. L. R. 309); *Nyquist* v. *Iron River Creamery Co.*, 260 Mich. 537.

In other States, however, situations involving all the instant elements have been considered and compensation denied. *George Koza's Case*, 236 Mass. 342 (128 N. E. 400); *Henry* v. *Industrial Commission*, 293 Ill. 491 (127 N. E. 714); *Williamson* v. *Industrial Accident Commission*, 177 Cal. 715 (171 Pac. 797); *Starling* v. *Morris*, 202 N. C. 564 (163 S. E. 584); *Johnson* v. *Seaburg Manfg. Co.*, 211 App. Div. 241 (207 N. Y. Supp. 401); *Wilson* v. *Dakota Light & Power Co.*, 45 S. D. 175 (186 N. W. 828).

Award vacated.

NORTH, WIEST, BUTZEL, BUSHNELL, SHARPE, POTTER, and CHANDLER, JJ., concurred.