Bruce Humphrey, by his next friend, Lillian N. Humphrey, Appellant, v. City of Des Moines, Appellee.

No. 46741.

October 16, 1945.

Raymond E. Hanke, of Des Moines, for appellant.

F. T. Van Liew, Paul Hewitt, Harvey Bogenrief, and C. B. Hextell, all of Des Moines, for appellee.

Miller, C. J.—Plaintiff's petition asserted: About two p. m., on June 25, 1944, he was operating a Chrysler automobile on a graveled street known as Madison Avenue in the city of Des Moines, in the vicinity of East Seventeenth Street, when he ran into holes or ditches in the street, traveled some little distance and overturned, receiving personal injuries; that defendant city was negligent in failing to keep said street in repair and in a safe condition in that it allowed a deep hole or ditch to extend into and take up part of said graveled street, making it dangerous for those traveling in automobiles thereon; and that plaintiff was free from contributory negligence. De-

fendant's answer admitted that plaintiff's automobile over-turned on East Madison Avenue but denied that plaintiff ran into holes or ditches in the street, denied that defendant was negligent in maintaining said street, alleged that the street was in a reasonably safe condition for vehicles that were driven in a lawful manner at a lawful rate of speed, and denied that plaintiff was free from contributory negligence because he traveled at an excessive speed, failed to keep a proper lookout, and failed to keep the automobile under control. Plaintiff's reply reasserted that plaintiff was free from contributory negligence.

At the close of the plaintiff's evidence in chief the court directed a verdict for the defendant. Hence, we have only the plaintiff's evidence before us. Plaintiff testified that he was proceeding east on Madison Avenue, approaching a rail-road crossing; about one hundred feet west of the railroad crossing he passed in front of the residence of Leo Pickens; there were trees on both sides of the street in front of Pickens' home and they cast shadows; as he neared Pickens' house he saw two holes in the street slightly to the right of the center of Madison Avenue; he had started to slow down for the rail-road crossing, and was not traveling more than twenty miles an hour; he saw the holes in the street when about fifty or sixty feet from them; he attempted to straddle the holes but hit the first one with his right front wheel; as that occurred his foot hit the accelerator, causing the car to increase its speed; just about then he hit the railroad tracks; before getting to the tracks he was headed toward the south side of the road at an angle but righted the car going toward the tracks and reached the north side of the street; then on the other side of the tracks there were some chuckholes and the car was in a bouncing motion from then on, a waving motion, until it upset; he did not think that he was pressing down on the accelerator after he hit the tracks, but the car hit some loose gravel along-side of the road and he did not apply his brakes because the loose gravel would cause it to skid; the holes east of the tracks were not quite as large as those to the west; when his car struck them it was bounding and bouncing from side to side from the time he struck the first two holes; all of the time he

was trying to right it and to keep it out of the ditches; it finally went over to the north side and upset. On cross-examination plaintiff testified that at the time of the accident he was traveling at such a rate of speed that he could have stopped within sixty feet of a discernible object but did not stop.

Leo Pickens testified for plaintiff that East Madison Avenue in the vicinity of his home was a hard-packed surfaced oil-and-gravel road; the black-top surface was twenty-five to thirty feet wide; on each side there were ditches eight to twelve inches deep, from eighteen to twenty-four inches wide; the railroad crossing was the Chicago and Northwestern Railroad, with one set of tracks; there were two holes in the surface of the black top in front of his house; they were from two to three feet apart, just to the right of the center as one proceeded east on Madison; the largest hole was directly north of his front door, had been there since freezing and thawing weather in the spring; as time went on and traffic crossed it, the hole kept getting larger; it was about three or four feet north and south, about three feet east and west, and measured three or four inches deep; it had "about a two-inch drop on the edges and then worked down in the center deeper, so that it was about four inches deep in the center and about two inches at the sides, and this two-inch drop was a straight-down drop that occurred about the same way all around the edge of the hole"; the other hole was just east of this one three or four feet, measured about two feet each way and was not quite as deep as the first hole, but it had the same two-inch drop all around the edge of the hole straight down; the street was like an ordinary graveled road, with little ruts and chuckholes here and there; "it was sort of wavy going from Sixteenth on, it wasn't as bumpy from Sixteenth to Fourteenth," from Sixteenth to Fourteenth it was bumpy all the way, an ordinary traveled road; "it was just an ordinary graveled road for a ways"; the waves were observable. On cross-examination he testified that he was home at the time of plaintiff's accident, heard plaintiff's car hit the hole in front of his home, looked up and saw plaintiff's car, and, after it hit the hole, it was traveling at least forty to fifty miles an hour.

Thomas Wheatley testified for plaintiff. He described the holes in the street in front of Pickens' home, located them about as plaintiff and Pickens had done, and described them as about the size that they had, but he did not specify the depth of them. In fact, the testimony of Pickens is the most complete of the three witnesses, as to the condition of the street, and is not controverted by that of the other witnesses in any substantial respect. There was other testimony, of course, but the foregoing should be adequate for the purpose of our decision herein.

I. This appeal challenges the correctness of the court's ruling on defendant's motion for a directed verdict. The first assignment of error asserts that the court erred in sustaining the motion generally in violation of Rule 118 of the Rules of Civil Procedure, which requires a separate ruling on each ground and forbids a sustaining of the motion generally. The ruling is not as specific as the Rule contemplates. In fairness to the trial court, however, it is quite apparent that it was convinced that the plaintiff was guilty of contributory negligence as a matter of law, and the ruling on the motion was predicated primarily upon that theory. However, had the court sustained that ground of the motion only and overruled the rest, we would still be required to consider all grounds, if the appellee relied upon them. While the appellee could not base a cross-appeal on any of the grounds overruled, it could assert such grounds here as a basis for an affirmance. Wentland v. Stewart, 236 Iowa 258, 18 N. W. 2d 305, and cases cited therein. As a practical matter, appellant challenges each ground of the motion to direct and appellee undertakes to support each as a basis for affirmance. Hence, our situation is not materially affected by the form of the trial court's ruling herein.

II. While, as above stated, the learned trial court based its decision primarily upon the theory that appellant was guilty of contributory negligence as a matter of law, we are disposed to base our decision on the proposition that the evidence was insufficient to establish actionable negligence on the part of appellee city.

Appellant relies upon our cases which interpret section 5945, Code, 1939, which provides that cities ''shall have the care, supervision, and control of all public highways, streets, avenues, alleys, public squares, and commons within the city, and shall cause the same to be kept open and in repair and free from nuisances.''

In the case of Abraham v. City of Sioux City, 218 Iowa 1068, 1070, 250 N. W. 461, 462, we stated:

''Section 5945 of the 1931 Code imposes the duty upon a city to care for, supervise, and control all public highways and streets within the city and to keep them open and in repair and free from nuisances. This statute requires the city to exercise reasonable and ordinary care to maintain its streets in a safe condition for travel in the usual and ordinary modes of travel. However, a city is not required to keep its streets in a condition of absolute safety. It is only required to use ordinary and reasonable care to that end. It does not insure the safety of travelers upon its streets, nor is it required to foresee and provide against every possible accident.''

Both sides cite the case of Johnson v. City of Ames, 181 Iowa 65, 75, 162 N. W. 858, 861. In that case we quote with approval from the case of Keen v. City of Mitchell, 37 S. D. 247, 250, 157 N. W. 1049, 1050, L. R. A. 1916F, 704, as follows:

''It seems to be generally held that a municipal corporation is not liable for every accident that may occur within its limits. Its officers are not required to do every possible thing that human energy and ingenuity can do to prevent the happening of accidents or injuries to the citizens. The law does not require that the city shall do more than keep its streets in a reasonably safe condition. The obstructions or defects, to make the corporation liable, must be such as are in themselves so dangerous that a person exercising ordinary prudence could not avoid injury in passing them. It is only against defects in streets of sufficient gravity to justify a careful and prudent man in anticipating danger from the existence thereof that a municipality is bound to guard. Cities are not required to keep their streets free from irregularities and trifling defects. It is the duty of a municipality to see that all its streets, open

for travel, are kept in repair and free from obstruction, and this duty has been performed when the way is without obstruction, or such structural defects as would endanger the safety of travelers in the exercise by themselves of ordinary care.''

The foregoing principles are well recognized. The difficulty of a given case lies not in stating the rule but in applying it to the particular facts. The following two cases would seem to be sufficiently analogous to be very persuasive as to our conclusion herein.

In the case of Peterson v. Chicago, M. & St. P. R. Co., 185 Iowa 378, 386, 170 N. W. 452, 455, we stated:

''These planks were placed upon the ties, the bottom of the planks being on a level with the ground. The ground on either side is necessarily looser and softer than the planks, and more easily worn down. An elevation of from two to three inches between the road surface and the top of the planks does not tend to show negligence, either in the construction or maintenance of the crossing. If we should so hold, then there is scarcely a public highway in the state of Iowa that is in a reasonably safe condition for travel. The company owes only the duty to keep the highway in a reasonably safe condition; to put it in as safe condition as highways usually and ordinarily are kept for travel. It is not bound to make the highway more safe than highways usually and ordinarily are made and kept for travel. The condition shown here did not render travel upon the road greater or more dangerous in its effect upon the traveler than the inequalities of surface found in all the ordinary roads and highways of the country, which no one would claim renders those highways not reasonably safe for ordinary use by the public. From our common observation, we all know that, in nearly every mile of the highways of the country, there are to be found depressions or ridges or other inequalities of surface which do not interfere with the safe use of the highway, when traveled over in the usual and ordinary method, but which are sufficient to jolt vehicles passing over them. The severity of the jolt would depend, of course, largely upon the speed at which the vehicle is moving at the time it passes over. There is no duty resting upon a railway

company to keep the surface of the road, at the crossing, so smooth and free from all inequalities that no jar or jolt will be caused by vehicles passing over the crossing. We think the evidence as to the condition of the crossing does not establish such inequality in the surface of the crossing as to interfere with the safe use of the crossing, when used in the usual and ordinary way. If this is not so, then the railroad company, in the maintenance of crossings, owes a higher duty, in respect to crossings, than anyone ever dreamed was due the public in the maintenance of public highways.''

In the case of Gable v. Kriege, 221 Iowa 852, 860, 267 N. W. 86, 90, 105 A. L. R. 539, we stated:

''A hole or depression of the extent that plaintiffs' testimony shows, three or four inches deep at its deepest point and not abrupt but cupped out by travel, would not render a highway unsafe for travel in the ordinary and reasonable manner of traveling thereon.''

Applying the foregoing pronouncements to the facts herein, it would appear that, under our holding in the Peterson case, supra, the fact that the holes complained of had a two-inch drop around the edge would not render them so dangerous to vehicular travel as to constitute actionable negligence. And, under our holding in the Gable case, supra, the fact that the maximum depth of the larger hole was four inches would not support a claim of actionable negligence on the part of the city. Many other cases are cited but none of them is as analogous as the Peterson and Gable cases and none of them appears to minimize the effect of either as a precedent of this court. Both were correctly decided and persuade us that the ruling of the trial court herein was correct because actionable negligence on the part of the city had not been established. Such conclusion on our part renders it unnecessary to discuss or decide the other assignments of error presented by appellant.

The judgment is—Affirmed.

OLIVER, BLISS, GARFIELD, WENNERSTRUM, SMITH, MANTZ, and MULRONEY, JJ., concur.

HALE, J., not sitting.