WILLIAM M. ROTH, Appellant, v. MINNIE I. HEADLEE, Executrix, and FRANK I. REED, Executor, Appellees.

No. 47102.

DECEMBER 16, 1947.

Joseph C. Picken and John E. Holmes, both of Des Moines, for appellant.

Lehman, Hurlburt, Hossfeld, Blanchard & Cless, of Des Moines, for appellees.

GARFIELD, J.— In effect, plaintiff-appellant asserts the question presented to us is whether there is sufficient evidence to warrant the allowance of his claim. This is a misconception. The action was tried at law without a jury. It is not reviewable here de novo but only upon the errors assigned. Rule 334, Rules of Civil Procedure; In re Estate of Hoenig, 230 Iowa 718, 720, 298 N. W. 887, 889; In re Estate of Anderson v. Application of Stason & Knoepfler, 216 Iowa 1017, .1019, 250 N. W. 183, and citations. The decision below on the facts has the force and effect of a jury verdict. Rule 334, Rules of Civil Procedure; In re Estate of Gollobit, 231 Iowa 1074, 1075, 3 N. W. 2d 191, 192; In re Estate of Evans, 228 Iowa 908, 919, 291 N. W. 460. It was for the trial court to determine the credibility of witnesses and the weight of the evidence. In re Estate of Martens, 226 Iowa 162, 165, 283 N. W. 885; Murphy v. Callan, 199 Iowa 216, 219, 199 N. W. 981.

It follows that the trial court's decision on the facts must stand unless plaintiff was entitled as a matter of law to have his claim established or, stated in another way, unless plaintiff would have been entitled to a directed verdict if there had been a jury trial. Precedents are obviously not applicable which hold there was sufficient evidence in a particular case to support the trial court's allowance of a claim. They would be relevant if plaintiff had won his case below and defendants

were here challenging the sufficiency of the evidence to support the adjudication.

Except on the issue of payment and other affirmative defenses, the burden rested on plaintiff to prove his claim by a preponderance of the evidence. Defendants are mistaken in asserting the proof must be clear, satisfactory, and convincing. That requirement prevails in an action in equity to enforce an oral contract of a decedent to convey real estate but does not apply to such an action as this. In re Estate of Dolmage, 204 Iowa 231, 213 N. W. 380; In re Estate of Newson, 206 Iowa 514, 524, 219 N. W. 305; In re Estate of Stratman, 231 Iowa 480, 487, 1 N. W. 2d 636, 642; In re Estate of Karr, 235 Iowa 351, 360, 16 N. W. 2d 634, 638.

In the absence of an admission by the adverse party, it is not often that one who has the burden on an issue establishes his claim as a matter of law. Kellogg v. Rhodes, 231 Iowa 1340, 1342, 4 N. W. 2d 412, 413, and citation. Such a claim as this is not necessarily established because the evidence is not denied. In re Estate of Rich, 199 Iowa 902, 917, 200 N. W. 713, and citations; In re Estate of Karr, supra. Plaintiff's evidence must still stand the test of credibility. Circumstances showing improbability, unreasonableness, or inconsistency may be sufficient to raise a conflict in the evidence. Baker v. General Am. L. Ins. Co., 222 Iowa 184, 189, 268 N. W. 556, and citations.

A verdict should be directed where: 1. But one reasonable conclusion can be drawn from the proof. 2. The facts are clearly established by unconflicting evidence. 3. There is no substantial evidence to overcome a prima facie case. 4. By giving the opposite party the benefit of the most favorable view of the evidence the verdict against him is demanded. Kern v. Kiefer, 204 Iowa 490, 492, 215 N. W. 607, 608, and citations; Baker v. General Am. L. Ins. Co., supra; Gregg v. Middle States Util. Co., 228 Iowa 933, 957, 293 N. W. 66, 132 A. L. R. 415. We think the proof here is not such as would have entitled plaintiff to a directed verdict upon trial to a jury and that there must be an affirmance.

Decedent, who lived in Des Moines, was eighty-four when he died in July 1945, owning a farm in Monroe county, another in Keokuk county, a home in Des Moines, personalty of about

$12,000 in value, in addition to $20,000 of government bonds. His hearing and eyesight were poor. Plaintiff's claim filed August 1, 1946, as amended on October 1st, fills over nine pages of the record. It alleges that about March 1, 1928, decedent employed plaintiff to aid him in managing, selling, and exchanging his property and collecting obligations due him, for an agreed consideration of half the increase in value of the property plus a reasonable monthly salary, alleged to be $150, and also five per cent of gross rents, sales, and collections; plaintiff accepted the employment and rendered such services through the period from March 1, 1928, to March 1, 1943; compensation received by him totaled only $610, part of the commissions due him on rentals, leaving a balance claimed of $31,180.

At the conclusion of the evidence in November 1946, plaintiff filed an amendment to his claim to conform to the proof, in which he alleges he performed services for decedent as requested by him, from March 1, 1932, to March 1, 1943, at a regular monthly salary of $150, and there is now due plaintiff from defendant executors $19,800 with interest. Plaintiff says in argument this amendment was intended to eliminate the claim for five per cent commissions.

The testimony, much of it in question-and-answer form, fills only about thirteen pages of the record. Plaintiff did not testify. The explanation offered is that he was an incompetent witness under the dead man statute, section 622.4, Code, 1946. While this statute prohibited his testimony in regard to any personal transaction or communication between him and decedent, and made it more difficult for plaintiff to prove his claim (see Soderland v. Graeber, 190 Iowa 765, 775, 180 N. W. 745), it did not prevent him from testifying to other matters, such as his observations (In re Estate of Talty, 232 Iowa 280, 282, 5 N. W. 2d 584, 585, 144 A. L. R. 859, 861, and citations) or the preliminary facts required for the authentication of books of account, the admissibility of which is permitted by section 622.28, Code, 1946 (In re Estate of Cummins, 226 Iowa 1207, 1209, 286 N. W. 409, and citations).

There is no direct evidence of an employment agreement. It is true such an agreement may be established by cir-

cumstantial evidence. Maasdam v. Estate of Maasdam, 237 Iowa 877, 890, 24 N. W. 2d 316, 322, 323, and citations; Feltes v. Tobin, 187 Iowa 11, 22, 171 N. W. 739; 20 Am. Jur., Evidence, section 1189. But the circumstantial evidence here consists largely of oral declarations and admissions of decedent several years before the trial, together with some testimony plaintiff accompanied decedent and assisted him at various times.

Evidence of such oral statements of decedent should be closely scrutinized and cautiously received because it is not susceptible of denial and the witnesses may not have been capable or desirous of accurately relating what decedent may have said. In re Estate of Straka, 224 Iowa 109, 113, 275 N. W. 490; In re Estate of Rich, 199 Iowa 902, 916, 917, 200 N. W. 713, and citations; Sharpe v. Wilson, 181 Iowa 753, 768, 161 N. W. 35; 31 C. J. S., Evidence, section 266; 20 Am. Jur., Evidence, 1048, section 1196. See, also, Vander Zyl v. Muilenberg, 239 Iowa ——, 29 N. W. 2d 412, 414.

One Denburger, a real estate broker in Oskaloosa, testified he had known plaintiff and decedent since about 1938 and saw them a number of times down to 1943 regarding sale of one of decedent's farms; plaintiff and decedent were together when the farm was listed with witness and when the sale was closed; decedent said plaintiff was working for and helping him; in 1942 witness asked decedent in plaintiff's presence if plaintiff was not a very valuable man to him and decedent said, "Yes, he could not get along without Mr. Roth [plaintiff], the condition I am in. He can well afford to work for me because I pay him good. I pay him $150 a month and commissions of five per cent. He will be taken care of." (The inference from part of the above is that wages and commissions were paid as they were earned and not left to accumulate.) Witness understood decedent to say Roth was helping him in all his work. In 1943 plaintiff helped decedent down the steps to witness's office.

Mrs. Molyneux was the wife of a tenant on one of decedent's farms from 1932 to 1942. She said plaintiff and decedent were there when the farm was rented and about ten

to twelve times a year thereafter; perhaps six to eight times during the tenancy another person accompanied decedent; plaintiff was there at times without Reed (decedent), supervising the business, repairs, renting the place; Reed always depended on Roth; decedent and plaintiff talked over matters together; Roth looked after the grain rent and repairing the barn. The tenant testified to much the same effect but in less detail.

The remaining witness was Conway, a resident of Des Moines, who said his business was real estate and doing research work in a laboratory. He testified he met Reed and Roth together in 1932 in an Oskaloosa restaurant and talked with them about farms they were looking after; decedent said plaintiff was working with him and did Reed's seeing, hearing, and talking; witness had seen Reed and Roth together in the car and on the street between 1931 and 1939; once in 1940 decedent told witness, "I take care of Mr. Roth's moneys and provide him with what he needs" (no attempt was made to show the extent of such needs); asked what would happen to Roth if something would happen to Reed, the latter said "he would be taken care of in my will"; Roth continued in Reed's employ probably a year or two after that, doing just about everything, "he was at Mr. Reed's beck and call every day."

Apparently the trial court did not believe witness Conway. We cannot say the court was compelled to accept his testimony. Much of his evidence is quite improbable and unreasonable, if not actually incredible. The witness claimed to have discovered gold in Michigan when doing research work there. He testified Roth brought witness and decedent together and witness talked to decedent about every two weeks for a year about forming a corporation to reap a harvest from witness's gold mine; decedent offered to invest $75,000 in the gold mine "proposition" but witness said in effect he spurned the offer because decedent was unwilling to issue to plaintiff $25,000 of stock in the proposed corporation as a reward for bringing witness and decedent together. Yet Conway testified he had known Reed since 1902 or 1904, before he moved to Des Moines.

We have summarized substantially all the evidence. Although the executors offered no testimony, under the circumstances plaintiff was not necessarily entitled to recover. The

record leaves much to speculation and conjecture. The claim was not filed until a little more than a year after decedent's death. Decedent lived two years and four months after the termination of plaintiff's alleged services and was well able to pay any amount he may have owed plaintiff. Both plaintiff and decedent lived in Des Moines. No explanation is offered for the delay in asserting or filing the claim. It is. not usual or reasonable for a creditor to permit such a large indebtedness to accumulate or to delay assertion of his claim for such a period. Without going into detail, it appears there is some inconsistency between the verified claim as originally filed and as finally relied upon. In the end the claim was reduced by more than a third. If the trial court were to allow plaintiff some amount it would be almost impossible to arrive at an intelligent conclusion as to the period of time for which plaintiff had not been paid and the amount he should be allowed.

The trial court found it unnecessary to pass on the affirmative defenses of the statute of limitations and of payment. The issue of the statute of limitations presents nothing but a question of law. No disputed facts are involved. Since defendants urged this defense in the trial court, they are entitled to advance it here in defense of the judgment. Humphrey v. City of Des Moines, 236 Iowa 800, 803, 20 N. W. 2d 25, 26; Wentland v. Stewart, 236 Iowa 258, 261, 18 N. W. 2d 305, 306, and cases cited.

This action is founded on a claim for wages which accrued not later than March 1, 1943, when it is alleged the last service was performed. The cause of action existed on July 4, 1945, when chapter 222, Acts of the Fifty-first General Assembly, became effective. Under this act, which provides a two-year limitation for such an action as this, plaintiff was required to commence his action within six months after the effective date of the act or by January 4, 1946. Since the action was not commenced until August 1, 1946, it is barred by the provisions of said chapter 222. Section 614.1, subsection 9, Code, 1946, is a codification of said chapter except for the provision applicable to causes of action existing at the effective date of the act.

We think it proper to say, in view of the delay in asserting the claim, the fact plaintiff admits he was paid $610, the testimony of Denburger that decedent said ''I pay him,'' and under all the circumstances in the record, there is substantial evidence to support the defense of payment. See Baker v. Davis, 212 Iowa 1249, 1252, 1253, 235 N. W. 749, and citations; Griffith v. Portlock, 233 Iowa 492, 496, 497, 7 N. W. 2d 199, 201, 202.

Plaintiff complains of some of the trial court's findings of fact. It is argued there is evidence in support of some of the matters the court found were without evidential support. The findings of which complaint is made are no part of the judgment proper but appear in the ''Findings of Fact and Conclusions of Law.'' It is sufficient to say the judgment is right and finds adequate support in findings of fact which cannot be assailed. Any error in the findings complained of is deemed to be not prejudicial. In re Estate of Hale, 231 Iowa 1018, 1024, 2 N. W. 2d 775, 779, and cases cited; Concannon v. Blackman, 232 Iowa 722, 727, 6 N. W. 2d 116, 118.

Upon a consideration of all questions presented the judgment is—Affirmed.

OLIVER, C. J., and BLISS, HALE, SMITH, MULRONEY, and HAYS, JJ., concur.