MRS. WILLIAM F. POHLER, Appellant, v. T. W. SNOW CONSTRUCTION COMPANY, Appellee.

No. 47207.

(Reported in 33 N. W. 2d 416)

August 2, 1948.

Edward F. Rate, of Iowa City, and Morrison & Skaug, of Mobridge, South Dakota, for appellant.

Miller, Huebner & Miller, of Des Moines, for appellee.

GARFIELD, J.—This is a workmen's compensation case. The question presented to us is whether there is sufficient competent evidence to warrant the commissioner's finding that the employee's fatal injury arose out of and in the course of the employment.

Wm. F. Pohler had been employed by the T. W. Snow Construction Company for three or four years and worked for it in six states. Much of the company's work was upon pits, tanks and water mains for different railroads, especially the Milwaukee road. On November 8, 1945 Pohler had been working for three weeks near Mobridge, South Dakota, as supervisor of a crew of three, including himself. The men were sleeping and eating in a bunk car furnished gratuitously by the Milwaukee which had been spotted on a sidetrack in its yards at Mobridge. About 12:45 a.m. on November 9 while crossing the tracks to reach the bunk car Pohler was run over and killed by a freight train.

The main street of Mobridge runs north from but does not cross the railroad tracks which extend east and west. There are seven main tracks and, farther south, several sidetracks. The bunk car was on the south sidetrack. There is a cinder path varying in width from 10 to 25 feet from the south end of Main street south across the tracks. This path is commonly used by pedestrians in crossing the tracks.

About 4 p.m. on November 8 the men were forced to stop work because of an excess of seepage water in an excavation they were digging. Pohler concluded it would be necessary to get a pump and hose to remove the water from the excavation and intended that evening to contact one Hettle, a Milwaukee employee who had charge of a suitable pump and hose. After eating their supper in the bunk house Pohler and his two fellow servants, around eight or nine in the evening, walked into Mobridge over the cinder path in search of Hettle. They found him in town and arranged for their use of the pump and hose the next morning. This was done between nine and ten. Pohler then said he was going to telephone his wife in Iowa City and walked a block or two north to a hotel for that purpose. His two companions ate a sandwich and returned to the bunk car about 10:45 p.m.

Pohler reached the hotel about ten and placed a long distance call to his wife. The telephone circuits were "slow and jammed." Pohler attempted to get his call through for two hours but without success and about midnight left the hotel for the bunk car.

Pohler's body was found about one hundred seventeen feet east of the cinder path along the south rail of the fourth track from the north. His left leg and arm were almost severed from the body. He had been run over by the sixteenth car of an eastbound freight train which had been standing across the cinder path and pulled out about 12:45. The train moved only two or three car lengths and came to a stop within about a car length after Pohler was run over. Several witnesses testified there was no evidence Pohler was intoxicated or had been drinking.

Following a hearing, deputy industrial commissioner Ralph Young as sole arbitrator found Pohler was fatally injured by accident arising out of and in the course of his employment and allowed compensation to his widow, as claimant, for herself and minor daughter. Upon review by the industrial commissioner the award was affirmed. Upon appeal to the district court however, the award was set aside on the ground there was not sufficient competent evidence to warrant it. (See section 86.30(4), Code, 1946.) From this decision claimant has appealed to us.

I. In passing on the sufficiency of the evidence to support the award we must consider it in the light most favorable to claimant. Griffith v. Norwood White Coal Co., 229 Iowa 496, 498, 294 N. W. 741; Blankinship Logging Co. v. Brown, 212 Ark. 871, 208 S. W. 2d 778, 779, and citations; Schulte v. Grand Union Tea & Coffee Co., Mo. App., 43 S. W. 2d 832, 833.

II. In awarding compensation the industrial commissioner found Pohler's primary purpose in going to Mobridge was to arrange for the pump and held the injury arose while he was returning to his temporary home after performing this special service for his employer, within the doctrine of Kyle v. Greene High School, 208 Iowa 1037, 226 N. W. 71. See, also, Otto v. Independent Sch. Dist., 237 Iowa 991, 994, 23 N. W. 2d 915,

916. The district court upheld this finding as supported by sufficient competent evidence.

 Appellee-employer concedes Pohler was in the course of his employment when meeting Hettle to arrange for the pump and if he had returned directly to the bunk car after seeing Hettle he would have been in the course of his employment until he reached the car. Appellee contends, however, that by going to the hotel, placing the phone call and waiting there for the call to be completed, Pohler abandoned the special mission for his employer and was not in the course of his employment when injured. The district court rejected this contention. However, appellee is entitled to urge it here in support of the court's decision which was placed on another ground. Humphrey v. City of Des Moines, 236 Iowa 800, 803, 20 N. W. 2d 25, 26; Wentland v. Stewart, 236 Iowa 258, 261, 18 N. W. 2d 305, 306, and citations.

As pointed out in Otto v. Independent School District, supra, the opinion in Kyle v. Greene High School seems to confuse the two requisites for compensability, "arising out of" and "in the course of" employment, and what the Kyle opinion principally considers is the second of these two requisites. Appellee apparently acquiesces in this view.

 Under the Kyle opinion and the authorities therein cited as well as many others, an employee, though not at his regular place of employment and outside customary working hours, is within the course of his employment while performing some special service or errand or duty incidental to his employment in the interest of his employer and also while on his way from his home to perform, *and on his way home after performing such service, errand or duty.* As stated in Nehring v. Minnesota Mining & Mfg. Co., 193 Minn. 169, 171, 258 N. W. 307, 308:

"But if while so off duty from his regular employment he is called to do an errand or sent on a mission by the employer, the courts which have spoken on the subject hold it a special service begun the moment the employee leaves his home, or the place where the call comes to him, and ended only with his return."

It follows and, as stated, appellee concedes that Pohler, if he had not deviated from his course in order to place the phone call, would be within the course of employment while going to Mobridge to see Hettle and *returning to the bunk car after seeing him.*

We agree with the trial court there is full support in the evidence for the commissioner's finding the principal reason for Pohler's trip to Mobridge was the special errand for his employer to arrange for the pump. The commissioner found Pohler's placing the telephone call was merely incidental. Under these circumstances it is proper to apply the test announced in the leading case of In re Marks v. Gray (CARDOZO, C. J.), 251 N. Y. 90, 93, 167 N. E. 181, 183:

"If the work of the employee creates the necessity for travel, he is in the course of his employment, though he is serving at the same time some purpose of his own. * * * If, however, the work has had no part in creating the necessity for travel, if the journey would have gone forward though the business errand had been dropped, and would have been canceled upon failure of the private purpose though the business errand was undone, the travel is then personal, and personal the risk."

Among decisions which approve the Marks case are Brown v. Weber Implement & Auto Co., 357 Mo. 1, 9, 206 S. W. 2d 350, 354; Lindell v. Minnesota American Legion Pub. Co., 208 Minn. 415, 294 N. W. 416, 418, and citations; Barragar v. Industrial Commission, 205 Wis. 550, 238 N. W. 368, 370, 78 A. L. R. 679. See, also, 71 C. J., Workmen's Compensation Acts, section 420.

Under these authorities the fact that an incidental purpose of Pohler in going into Mobridge was to telephone his wife does not change the essential character of the trip from a special errand for the employer.

Like the trial court, we cannot accede to appellee's contention that placing the phone call and the two hours' wait were, as a matter of law, an abandonment of Pohler's employment which could not be resumed until regular working hours the next day. That they constituted a deviation therefrom may be conceded. And if injury had resulted between the time Pohler

started to walk a block or two north to the hotel and the time he returned to such point after placing the phone call it may be conceded, without deciding, such injury would not have arisen in the course of employment. But when Pohler in returning to the bunk car reached the place where he had turned aside from his employment to go to the hotel the deviation was ended and he resumed his employment. There was a substantial interval of both time and distance after such resumption before Pohler was injured on the direct route back to the bunk car.

Pohler was serving his employer as fully in returning to the bunk car following his interview with Hettle after placing the phone call as if he had returned without so doing or as if he had lived to resume his regular work the following day. So far as appears, it was wholly immaterial to the employer that the trip back to the bunk car was delayed by the attempted phone call. Pohler's deviation from his employment does not differ essentially from that of his two co-workers in going to a restaurant and eating a light lunch before starting to return to the bunk car.

Among the authorities which support our conclusion are:

Brown v. Weber Implement & Auto Co., 357 Mo. 1, 6, 206 S. W. 2d 350, 353, where an employee, after obtaining an order for his employer in the evening at a yacht club, stayed at the club with another couple dancing and drinking from 11:45 until 1:30 and was killed in returning to his home.

McCoy v. Simpson, 346 Mo. 72, 78, 139 S. W. 2d 950, 952. A salesman after finishing a business mission delayed his departure for home several hours during which he was drinking and dancing. "* * * although he delayed his departure for several hours after completing his business, when he did start for home he again resumed the duties of his employment." (Citations.)

Beem v. Lee Mercantile Co., 337 Mo. 114, 123, 85 S. W. 2d 441, 445, 100 A. L. R. 1044, where a salesman played cards at a restaurant for three hours before starting the return trip to his home, on which he was killed. The court says, "The diversion for pleasure in playing cards at the restaurant ended before deceased started on that journey."

Webb v. North Side Amusement Co., 298 Pa. 58, 147 A.

846. A chauffeur was killed while returning to Pittsburgh from New York City after two to three days of recreation at Atlantic City.

Ramsey v. Leahey, 102 N. J. Law 513, 134 A. 91. A ship's captain was returning to the ship from buying food and stopping to visit a friend two or three hours.

Oram v. Byron G. Moon Co., 285 N. Y. 42, 32 N. E. 2d 785, where an employee was injured while returning to her employer's office after attending a luncheon in furtherance of her employer's business and later transacting banking business for herself.

See, also, 71 C. J., Workmen's Compensation Acts, section 426; Aetna Life Ins. Co. v. Schmiedeke, 192 Wis. 574, 213 N. W. 292; Stratton v. Interstate Fruit Co., 47 S. D. 452, 199 N. W. 117; and, although not workmen's compensation cases, Riley v. Standard Oil Co., 231 N. Y. 301, 132 N. E. 97, 22 A. L. R. 1382; Edwards v. Earnest, 206 Ala. 1, 89 So. 729, 22 A. L. R. 1387; Orris v. Tolerton & Warfield Co., 201 Iowa 1344, 1351, 207 N. W. 365, 368, where we say:

"If Taylor * * * did totally depart from defendant's business for his own exclusive purpose, the relationship of master and servant was restored when he returned to the point of departure * * *."

We have considered the authorities cited by appellee. Except for Duggan v. Toombs-Fay Sash & Door Co., 228 Mo. App. 61, 66 S. W. 2d 973, in the five compensation cases cited by appellee on this branch of the case the industrial commission had denied an award. Obviously such cases present a different question than one like this in which an award was made. The Duggan case, supra, and Southern Cas. Co. v. Ehlers, Tex. Civ. App., 14 S. W. 2d 111, principally relied on by appellee, are discussed and distinguished in Beem v. Lee Mercantile Co., supra, 337 Mo. 114, 85 S. W. 2d 441, 100 A. L. R. 1044, on the ground the injury occurred in those cases before the employment had been resumed. The Duggan case is also discussed and distinguished in Brown v. Weber Implement & Auto Co., supra, 357 Mo. 1, 206 S. W. 2d 350.

 If, as we hold, the finding is warranted that Pohler's fatal injury occurred in the course of his employment, there is ample support for the conclusion it arose out of his employment. Appellee in effect so concedes except for its reliance on the contentions hereinafter considered. Furtherance of his employer's interests in arranging for the use of the pump exposed Pohler to the danger of injury from the train when returning to the bunk car from the special errand. There is substantial evidence of causal connection between the employment and the injury. In support of this holding it is sufficient to cite annotations in 51 A. L. R. 509, 514, 80 A. L. R. 126; Davis v. Bjorenson, 229 Iowa 7, 293 N. W. 829; Kennedy v. Thompson Lbr. Co., 223 Minn. 277, 26 N. W. 2d 459, 461, and citations; Wahlig v. Krenning-Schlapp Grocer Co., 325 Mo. 677, 29 S. W. 2d 128, 131, 132, and citations; Zeier v. Boise Transfer Co., 43 Idaho 549, 254 P. 209, and citations.

III. The trial court held that Pohler must have attempted to crawl through or under the train; nothing justified such a hazardous act; therefore, the evidence does not support the commissioner's conclusion the fatal injury arose out of the employment. Upon this ground the award was reversed. This conclusion of the trial court cannot be sustained.

As stated, the evidence must be taken in the light most favorable to claimant. It is not shown what Pohler did just before he was injured. There was no eyewitness to the fatal accident. There is no evidence Pohler knew an engine was attached to the string of freight cars that was blocking the crossing nor that the cars were about to move. There is testimony "dead" trains stood on the crossing at times. A "cut" of cars was moving on the track immediately south of that occupied by the train when it started to move. This may have diverted Pohler's attention or confused him in the darkness of the night. It is shown the headlight on the engine was not lighted until the train did start. The engine was fifteen cars east of the crossing and visibility in that direction was not good.

No one knows how long Pohler may have waited for the crossing to be cleared. The hotel clerk said Pohler left the hotel about midnight for his bunk car. The accident happened at 12:45. The crossing is only a few blocks from the hotel.

On previous occasions the workmen had climbed between cars standing on the tracks in order to get to the bunk car. So far as shown there was no other convenient route to the car. It does not appear Pohler violated any rule or instructions of his employer. Pohler had worked and lived in and around railroad yards much of the time for three or four years.

It may be conceded Pohler was negligent in attempting to climb between or crawl under standing freight cars, if that is what he did, rather than to wait an indefinite time for the crossing to be cleared. But we have held many times negligence of the employee is no defense. Marley v. Orval P. Johnson & Co., 215 Iowa 151, 159, 244 N. W. 833, 85 A. L. R. 969; Wallace v. Rex Fuel Co., 216 Iowa 1239, 1248, 250 N. W. 589, 593, where we say "That he was negligent, grossly so, may be conceded. This, however, will not defeat recovery." Danico v. Davenport Chamber of Commerce, 232 Iowa 318, 325, 5 N. W. 2d 619, 623.

The trial court's decision is apparently largely based on Christensen v. Hauff Bros.. 193 Iowa 1084, 1091, 188 N. W. 851, 854, where an employee attempted to board a moving freight train without waiting for the caboose "by mounting the flat car in a most unusual manner, and for reasons wholly unjustifiable." We held an injury in the doing of "such unusual and rash act" did not arise out of the employment. The decision is not in point. Here, as stated, so far as shown, Pohler made no attempt to mount in a most unusual way a moving train or even a train to which he knew an engine was attached.

We think Griffith v. Norwood White Coal Co., 229 Iowa 496, 294 N. W. 741 (MILLER, J.), is more nearly in point. Certainly the showing of carelessness of the employee is stronger in the cited case than here. Plain violation of rules of the employer was also shown there. Yet we held the employee's conduct amounted to negligence and nothing more. See, also, Knipe v. Skelgas Co., 229 Iowa 740, 294 N. W. 880; Fickbohm v. Ryal Miller Chevrolet Co., 228 Iowa 919, 925, 292 N. W. 801; Sachleben v. Gjellefald Constr. Co., 228 Iowa 152, 290 N. W. 48; Wallace v. Rex Fuel Co., 216 Iowa 1239, 250 N. W. 589.

Courts are practically unanimous in holding the term "injury arising out of and in the course of the employment"

should be given a broad and liberal interpretation. Yates v. Humphrey, 218 Iowa 792, 799, 800, 255 N. W. 639, 642, and citations. We are not disposed to hold Pohler's conduct was as a matter of law so unusual, rash and unjustifiable that his injury did not, within our decision in Christensen v. Hauff Bros., supra, arise out of his employment. Nothing more than Pohler's negligence appears.

As stated in Griffith v. Norwood White Coal Co., supra, at page 501 of 229 Iowa, page 743 of 294 N. W.:

"For the rule [if it can be called such upon which appellee relies] to be applicable, the employee must be at a place where he would not reasonably be expected to be in the course of his employment or must willfully do some act which creates a new and added peril to which his employment cannot reasonably be said to have exposed him."

This is not such a case—certainly not as a matter of law.

IV. Appellee urges another defense which the trial court rejected. It is argued it conclusively appears Pohler violated this South Dakota statute:

"Section 52.1203 It shall be unlawful for any person * * * in any manner to enter upon, occupy, or appropriate any part of any railway train * * * except by permission of the conductor in charge of such train, or for the purpose of riding thereon in a proper and lawful manner as a passenger at the regular rate of fare * * * and in the regular coaches or cabooses provided for the regularly established stations.

"Section 52.9920 Riding on trains or railroad equipment without consent: Penalty. Whoever shall violate any of the provisions of Section 52.1203 relating to riding on railroad trains or equipment without consent shall be guilty of a misdemeanor."

The trial court was right in rejecting this defense. The statute is obviously intended to prohibit riding or "bumming" on trains without consent. At best it is doubtful if the statute applies to anything it is claimed Pohler did. But assuming the statute has some such application, Pohler's violation thereof is not shown. If Pohler crawled under the train, he may not

have touched it, much less "enter upon, occupy, or appropriate any part of" it, until he was unintentionally run over.

There is another complete answer to this contention. It is not every violation of statute or rule by an employee that constitutes a defense but only such as amounts to a departure from the course of employment. Where an employee when injured is rendering a service he is employed to do or is doing something incidental thereto but does it in an unlawful or forbidden manner, he does not thereby depart from his employment even though the injury is a consequence of such violation. It is only when the service the employee is performing is itself prohibited, as distinguished from the manner in which the service is performed, that the violation of a statute or rule of the employer takes the employee out of the course of his employment and constitutes a defense. When, and only when, the statute or rule limits the scope of the employment and not merely the manner of rendering the service or doing the act which is not prohibited does the violation of the statute or rule constitute a departure from the course of employment. The test is whether the regulation was calculated to limit the scope of employment or only to govern the manner of performing a more comprehensive task.

Numerous authorities support the above views. Many of them are collected in annotations in 23 A. L. R. 1161, 26 A. L. R. 166, 58 A. L. R. 197, 83 A. L. R. 1211 and 119 A. L. R. 1409. Wallace v. Rex Fuel Co., supra, 216 Iowa 1239, 1246, 1248, 250 N. W. 589, and citations, fully support the above conclusions as applied to violation of a rule of the employer, which differs from a statute only in that an employee is bound by a statute even though unacquainted with it. (See annotation 23 A. L. R. 1161.) See, also, M. & K. Corporation v. Industrial Commission, Utah, January 28, 1948, 189 P. 2d 132, 138, 139, and citations; Moore v. J. A. McNulty Co., 171 Minn. 75, 213 N. W. 546; Nester v. Korn Baking Co., 194 Iowa 1270, 1272, 190 N. W. 949.

As applied to the present case, there is no indication the statute was calculated to limit the scope of Pohler's employment. It did not prohibit Pohler's going into Mobridge, interviewing Hettle or returning to the bunk car. At most the statute did

no more than to regulate the manner of Pohler's performing a small part of that service upon his return trip.

With instructions to affirm the award of the commissioner, this cause is—Reversed and remanded.

All JUSTICES concur.