95 N.W.2d 287 (1959)
In re ESTATE of Rosle BROOKS, Deceased.
W. Lawrence OLIVER, Appellant,
v.
Luther T. GLANTON, Jr., Administrator, Appellee.
No. 49670.
Supreme Court of Iowa.
March 10, 1959.
*288 W. Lawrence Oliver, Des Moines, for appellant.
Henry T. McKnight, Des Moines, for appellee.
GARRETT, Justice.
Rosie Brooks, a resident of Des Moines, died on December 21, 1957, her husband Alonzo W. Brooks having predeceased her. Luther T. Glanton, Jr. was appointed administrator of her estate. On or about March 14, 1958 W. Lawrence Oliver filed his verified claim against her estate as follows: "W. Lawrence Oliver, Plaintiff, claims of Luther T. Glanton, Jr., Administrator of the estate of said decedent the sum of One Thousand Ninety-One/Forty Two Cents ($1,091.42) Dollars and interest at the rate of 5 per cent from the 1st day of January, 1954, That the Plaintiff Above Rendered Legal Services to the Deceased, Rosie Brooks and Her Deceased Husband, Alonzo Brooks During Both of Their Lifetimes, Which the Deceased, Rosie Brooks Agreed To Pay Plaintiff For Same As Follows To-wit: Two Trips To Chicago Before Railroad Adjustment Board $300.00. Trial In Federal District Court At Des Moines 350. Preparing and Presenting Appeal to Circuit Court in St. Louis, Missouri, Accompanied By Both Deceased $750.00. Payment of Brief for Railroad Adjustment Board 91.42 Total $1,491.42 That the deceased Rosie Brooks paid Plaintiff the sum of $400.00, the last payment in October, 1957, of $100.00 with promise to pay balance in full in sum of $1,091.42 for legal services as enumerated above as now fully appears by the statement above hereto attached, marked Exhibit `A' and made a part hereof. Wherefore, Plaintiff asks the allowance of said claim."
The administrator filed his resistance to the claim alleging it shows on its face that it is within the statute of frauds in that it seeks to hold the estate responsible for the debts and defaults of a third person without the decedent having acknowledged the indebtedness in writing; that the claim is barred by the statute of limitations; that at most the claim could be based only on an open account barred in five years; that the services were rendered in 1947, 1948 and 1949 to Alonzo Brooks, decedent's husband who predeceased her and that the services were not reasonable and necessary family expenses.
Claimant filed his reply to said resistance denying the material allegations thereof *289 and stating that Alonzo Brooks left no estate but transferred all his property during his lifetime to his wife, Rosie Brooks, and that he represented said parties in the transfer.
The district court ordered that the issues thus raised be heard by the referee in probate and on May 29, 1958 the hearing was held. Octave B. Baker testified for claimant that in the latter part of October, 1957, when he came to the home of Rosie Brooks to pay his house rent he heard a conversation between Mrs. Brooks and claimant, W. Lawrence Oliver, who appeared pro se at the hearing.
"Q. And what did you hear Rosie Brooks say and what did you see her do and what did you hear me say and what did you see me do? A. I came to her house to pay our rent and you were there, and you and Mrs. Brooks were in the living room and you was about ready to leave, and I seen you give Mrs. Brooks a receipt. She gave you some money and I did hear her say, `Mr. Oliver, I intend to pay you every cent that I owe you because I am the one that hired you in the first place.' Now that is all I heard.
"Q. Did you see a receipt being given to her by me? A. Yes, I did.
"Q. Did you see her give me any money? A. No.
"Q. This was the latter part of October, 1957? A. That is right."
On cross-examination he testified:
"Q. You don't know what she talked about that she owed? A. No, but she did say, `Mr. Oliver, I intend to pay you every cent', and then, `I am the one that hired you to start with'.
"Q. Whether she was talking about this claim or another claim the only thing you know is what Mr. Oliver told you. A. Only what I hear.
"Q. But what she was talking about, you don't know? A. No, not exactly. I am just telling you what I heard."
Claimant testified, "I am a practicing lawyer in the city of Des Moines and have been for approximately 24 years; * * * During the time * * * I have appeared in the United States District Court for the Southern District of Iowa and appeared in the United States Circuit Court of Appeals, 8th Circuit at St. Louis, and have also performed other legal services by making two trips to Chicago, as referred to in my claim now on file."
Exhibits A and B were received in evidence, exhibit A being the court's opinion in the case of Brooks v. Chicago, Rock Island & Pacific Railroad Company, in the United States Circuit Court of Appeals for the 8th Circuit, 177 F.2d 385 and exhibit B being a document connected with the appeal from a decision of the manager of personnel of said railroad.
The referee in probate allowed the claim. The administrator filed exceptions, in substance that the claim was for attorney's fees for services rendered decedent's husband; that such services were not within the purview of section 597.14 of the 1954 Code, I.C.A. making certain family expenses chargeable upon the property of both husband and wife; that exhibits A and B should not have been admitted in evidence; that they showed on their face that the services were rendered to decedent's husband and were therefore incompetent and hearsay; that they showed the services were rendered in 1949 and that the claim is now barred by the statute of limitations; that there was no competent testimony to stop the running of the statute; that the services having been rendered for her spouse and not for the decedent, her estate is being called upon to pay the debt of another without her having admitted liability in writing, contrary to the statute of frauds; that the claimant failed to establish that he had a contract with decedent to pay for services rendered her husband; that he failed to show by competent *290 evidence that any services were rendered decedent and their reasonable value if any were rendered, and that the evidence was insufficient to prove an express contract or understanding between the claimant and decedent.
Claimant, answering said exceptions denied the material allegations therein and alleged his services were rendered to both decedent and her husband; that he was employed by Rosie Brooks; that his services were rendered under a specific contract with her and that such contract was not subject to attack for unreasonableness.
The claim, together with the objections thereto came on for hearing before the court on June 20, 1958 and the court entered judgment denying it.
I. The errors assigned are (1) that the court erred in setting aside the order of May 29, 1958 allowing the claim and (2) in failing to allow it. We hold the trial court committed no error in either respect. Rule 219, R.C.P. 58 I.C.A. provides, "Every final adjudication of any of the rights of the parties in an action is a judgment."The order was not a final adjudication as it contained an express provision granting the administrator "fifteen days time for review by filing proper objections and exceptions." It was interlocutory and followed the provisions of Rules of Civil Procedure 207 to 214 inclusive. An order or judgment is interlocutory if it does not finally dispose of the case. Williams v. Bourne, 248 Iowa 189, 79 N.W.2d 751 and cases cited.
II. This appeal is not triable de novo but on errors assigned. The findings of fact by the trial court are conclusive upon us if they have proper support in the record. We find they have such support. It was for the trial court to determine the credibility of the witnesses and the weight of the evidence. Roth v. Headlee, 238 Iowa 1340, 29 N.W.2d 923; In re Estate of Hoenig, 230 Iowa 718, 298 N.W. 887.
III. The court found "From Claimant's Exhibits A and B it would appear that the services rendered by the claimant to Alonzo W. Brooks occurred sometime between September 21, 1946, the date the said Brooks was discharged from his employment with the Chicago, Rock Island and Pacific Railroad Company, and November 10, 1949, being the date that the appeal of said Brooks was decided in the United States Court of Appeals for the 8th Circuit," and that "There was no testimony as to agreement between the claimant and Rosie Brooks as to the consideration to be paid for the services," and held the claimant had failed to prove by a preponderance of the evidence the essential allegations of his claim and that it was barred by the statute of limitations.
IV. It is undisputed that claimant rendered the services described in his claim but it is disputed that he rendered them for Rosie Brooks. They were rendered in connection with a claim of decedent's husband against his former railroad employer. Decedent was not a party to the claim against the railroad company. Claimant alleged and offered evidence to the effect it was Rosie Brooks who hired him "in the first place". If that is true it was by verbal agreement entered into in 1947, 1948 or 1949 when the legal services were being rendered. There was some evidence of payments and of an oral promise to pay. Never did Rosie Brooks make an admission in writing that the debt was unpaid or make in writing "a like new promise to pay the same." There was evidence of a partial payment in 1957. Partial payment or an oral promise to pay a debt will not toll the running of the statute. Hootman v. Beatty, 228 Iowa 591, 293 N.W. 32; In re Estate of Sleezer, 209 Iowa 56, 227 N.W. 644, 645. The claim is not supported by evidence as to when any payments were made except the statements of Baker that in October, 1957 "She gave you some money" and "Q. Did you see her give me any money? A. No." There *291 is no evidence of payments between 1949 and 1957.
Section 614.1 provides: "Actions may be brought within the times herein limited, respectively, after their causes accrue, and not afterwards, except when otherwise specially declared: * * * 5. Unwritten contractsinjuries to propertyfraud other actions. Those founded on unwritten contracts," etc.
Section 614.11 provides: "Causes of action founded on contract are revived by an admission in writing, signed by the party to be charged, that the debt is unpaid, or by a like new promise to pay the same."
"The Legislature has definitely pointed out the method that is available to raise the bar of the statute of limitations. It expressly requires a written promise or a written acknowledgement." In re estate of Sleezer, supra. Mortenson v. Knudson, 189 Iowa 379, 176 N.W. 892.
Affirmed.
All Justices concur.